## GREEN v. STATE.

4724                                        258 S. W. 2d 56

Opinion delivered May 25, 1953.

*Jim Merritt* and *Claude Cruce,* for appellant.

*Tom Gentry,* Attorney General and *Thorp Thomas,* Assistant Attorney General, for appellee.

WARD, Justice.   On June 27, 1952, an information was filed by the Prosecuting Attorney against Warren Green [a Negro] charging him with grand larceny for stealing a cow valued at more than $35.00. On September 20, 1952, Green was tried and convicted by a jury which fixed his punishment at imprisonment in the State Penitentiary for three years.

In appellant's motion for a new trial and on appeal he assigns numerous grounds for a reversal. We have concluded that one of these assignments, later considered, calls for a reversal and therefore the other assignments which relate to the admissibility of certain testimony, the eligibility of a jury commissioner, the opening of the jury list, etc., need not be discussed.

*Negroes excluded from the trial jury.* Three days before the trial appellant filed a motion to quash the regular panel of the petit jury on the ground that the jury commissioners had intentionally excluded electors of the Negro race from said jury panel and that Negroes had been intentionally and systematically excluded from jury service in Drew County for 20 years, solely because of color, all in violation of the Constitution of the United States and the Constitution of the State of Arkansas. Some question arises as to whether the motion went only to the regular jury panel or to it and the special jury list. As we view this case it makes no material difference in this instance how the motion is construed but we think the effect of the motion challenged the regular panel and it shall be so considered.

Pursuant to statute the jury commissioners in February, 1952, selected the jurors for the September, 1952, term of court. They selected for the regular panel 24 regular and 6 alternate jurors, all White. At the same time they also selected a special panel consisting of 17 Whites and 9 Negroes, the latter being at the bottom of the list. This last list was selected pursuant to *Ark. Stats.* § 39-220, and, as provided therein, was to be used in lieu of bystanders when and if the regular panel was exhausted. In this instance the regular panel list was opened some 10 days before the first day of the September term of court and it appears that the special list was opened some few days before the defendant was put on trial.

The trial judge overruled appellant's motion to quash the jury panel with a statement to the effect that every jury commission in his district had always been and will continue to be instructed to select jurors without regard to race, creed or color, and that this instruction had been given to the jury commission involved in this case.

At the hearing on the motion facts developed pertinent to the question under consideration, in addition to those mentioned above, are substantially as follows:

According to the oral testimony introduced and the records exhibited at the hearing on the motion, no Negro had ever been selected on the regular panel of jurors in Drew County for many years and only in one instance had a Negro been selected as an alternate on such panel, and the only instances where Negroes had served as jurors in any capacity, or had the opportunity to so serve, were the ones presently mentioned. A. J. Hicks, colored, was an alternate on the list selected in February, 1949, and served one day. At the 1948 September term four Negroes were called as bystanders to serve on a jury. A former sheriff who served from 1943 to 1949 remembered calling some Negroes as bystanders to serve on a jury, but this could have been the same incident before mentioned.

The three jury commissioners testified that they had no objections to having Negroes on the juries and that they did not exclude Negroes from the September, 1952, list because of color. They also stated that the judge had instructed them to disregard race, color and creed in selecting jurors.

It is not disputed that approximately one-third of the qualified electors in Drew County are Negroes and that a substantial number of them have the qualifications to serve as jurors.

Under the above factual situation were the constitutional rights of appellant prejudiced by the trial court's refusal to grant his motion to quash the regular panel of the petit jury? In our opinion the answer is in the affirmative.

*Past exclusion.* In our opinion the factual situation here makes out a *prima facie* case that Negroes had been systematically excluded from jury service in Drew County for many years before the trial of appellant, and that such exclusion was because of color. Only once in the past had a Negro been selected by the jury commissioners on the regular panel of petit jurors, and in that instance he was chosen as an alternate. The relatively few instances when Negroes had been allowed to serve on special panels, not selected by jury commissioners, in no way conform to the mandate against racial discrimination contained in the 14th Amendment to the Constitution of the United States. The method of selecting petit jurors, as set out by the Statutes of Arkansas, is by jury commissioners and the rights of Negroes under these Statutes can not be met in the manner above indicated. In cases where the facts were similar to the facts here our courts have consistently held they amounted to exclusion because of race or color in violation of the Constitution. For some of those decisions see: *Maxwell* v. *State,* 217 Ark. 691, 232 S. W. 2d 982; *Hill* v. *Texas,* 316 U. S. 400, 62 S. Ct. 1159, 86 L. Ed. 1559; *Hale* v. *Kentucky,* 303 U. S. 613, 58 S. Ct. 753, 82 L. Ed. 1050; *Pierre* v. *Louisiana,* 306 U. S. 354, 59 S.

Ct. 536, 83 L. Ed. 757; *Patton* v. *Mississippi,* 332 U. S. 463, 68 S. Ct. 184, 92 L. Ed. 76; *Norris* v. *Alabama,* 294 U. S. 587, 55 S. Ct. 579, 79 L. Ed. 1074; and *Akins* v. *Texas,* 325 U. S. 398, 65 S. Ct. 1276, 89 L. Ed. 1692.

The same conclusion was reached in the case of *Smith* v. *Texas,* 311 U. S. 128, 61 S. Ct. 164, 85 L. Ed. 84, where the court observed that the names of Negroes were placed at the bottom of the jury lists and that the jury commissioners stated they had not intentionally excluded Negroes because of prejudice or color. This case involved grand jurors but our own Court, in *Washington* v. *State,* 213 Ark. 218, 210 S. W. 2d 307, recognizes, along with other jurisdictions, that the same rule applies in this connection to both petit and grand juries.

*Exclusion not cured.* It is argued that regardless of whatever exclusion may have obtained in the past, the jury panels from which was chosen the trial jury contained the names of nine Negroes and that this was a compliance with all constitutional requirements. We are not convinced by this argument.

Although the record is silent as to what method was used in selecting the trial jurors, what jurors were selected, or what opportunity appellant had of securing jurors of his own race, yet we think this is immaterial in this instance. As was said in the *Maxwell* case, *supra,* "we are dealing primarily with the Constitution as distinguished from a particular defendant" and, as was also stated in that case, it makes no difference if the result of the trial would have been the same if the regular panel had been quashed in compliance with appellant's motion. Whatever rights appellant had under the Constitution existed and were invaded at the time his motion was overruled. Notwithstanding what did actually happen in regard to securing an impartial jury, it cannot be denied that the action of the court left appellant faced with the prospect of having to eliminate some forty jurors before he could reach members of his own race. In a situation very similar to the one here where the court discharged all of the regular panel except thirteen,

which panel preceded a special list containing eight Negroes, this court held, in the *Maxwell* case, *supra,* it was error not to have excluded the entire panel.

It is true, as contended, that past exclusion may be cured in any particular instance by the selection of a proper jury consisting of part Negroes, as was held in the case of *Washington* v. *State,* 213 Ark. 218, 210 S. W. 2d 307. The facts as stated by the court in the cited case were quite different, however, from the facts here, for it is stated in the opinion that three Negroes "were members of the regular panel, and numbered 7, 10 and 12 in the examination of jurors for trial in this [that] case."

It has been uniformly stated in many decisions that no one of a certain race has the right to demand a jury composed wholly or partially of his own nationality, and we are in thorough agreement. See: *Dorsey* v. *State,* 219 Ark. 101, 240 S. W. 2d 30, and *Martin* v. *Texas,* 200 U. S. 316, 26 S. Ct. 338, 50 L. Ed. 497. However, once a *prima facie* case of exclusion in the past on account of race or color has been established, as we hold it has here, it cannot be overcome by the selection of a trial jury panel which does not contain the names of jurors which are of the same race as the defendant. Otherwise it would be presumed that the same systematic exclusion because of race or color still existed.

In accordance with the views above set out, we conclude that the judgment of the trial court must be reversed.