812

DENNIS WAYNE McDONALD *v.* STATE OF
ARKANSAS

5792                                    491 S.W. 2d 36

Opinion delivered January 22, 1973
[Rehearing denied March 5, 1973.]

*Autrey & Weisenberger,* for appellant.

*Ray Thornton,* Atty. Gen., by: *Robert H. Crank,*
Asst. Atty. Gen., for appellee.

GEORGE ROSE SMITH, Justice. This prosecution for
rape was defended on the ground that the prosecuting
witness consented to the act of intercourse. The jury, re-

jecting that defense, returned a verdict of guilty and fixed the punishment at imprisonment for 30 years.

There is no merit in the contention that the verdict is not supported by substantial evidence. The prosecutrix testified that on the morning of June 19, 1971, after her husband had left to take the couple's son to work, the defendant appeared in her bedroom, armed with a knife wrapped in a cuptowel. By threatening her with the knife the defendant forced the prosecutrix to go out to her daughter's car, which was parked behind the garage. There she was compelled to submit to him. The defendant, testifying in his own defense, insisted that the prosecutrix consented to having intercourse with him. He admitted having picked up the knife and the cuptowel in the prosecutrix's kitchen, but he denied having threatened the prosecuting witness in any way. His explanation was that he meant to steal the knife and take it to his grandmother's house, where there were not enough steak knives to go around. The conflicting testimony presented a question of fact for the jury, whose verdict settles the issue.

The date of the trial was set three weeks in advance. On the morning of the trial the accused expressed dissatisfaction with his appointed attorney, stating that the attorney had talked to him only twice before the trial and had indicated that he thought the defendant should plead guilty. The trial judge expressed his confidence in the lawyer and refused to relieve him, but he did appoint additional counsel to assist in the trial.

We find no error. There is no indication that any other facts would have been disclosed by more frequent attorney-client discussions before the trial. To the contrary, the appointed attorney stated that nothing could have been accomplished by additional conferences. Even so, the court appointed a second lawyer to assist in the trial and still a third one to handle this appeal. In a matter that lies primarily within the discretion of the trial judge, who observes the conduct of counsel at first-hand, we find nothing to indicate an abuse of discretion.

The appellant complains that at the trial he was unshaven and had unusually long hair. In the court below there was no objection on the ground now urged, nor any request that the accused be afforded an opportunity to shave or get a haircut. It is now insisted, however,

that his rights should have been explained to him, so that he could decide what he wanted to do.

That argument is unsound. This defendant's appearance was not necessarily prejudicial, as may be the case when the accused is tried while wearing prison garb. *Miller* v. *State*, 249 Ark. 3, 457 S.W. 2d 848 (1970). Here McDonald evidently preferred to have his hair long, for he admitted that it was long when he was arrested. By failing to make any objection he speculated upon the possibility that the jury might be favorably or sympathetically impressed by his appearance. After the verdict proved to be adverse it is too late for him to change his mind and suggest that he would have demanded a haircut if he had known one to be available. Moreover, there is no proof that a haircut would not have been supplied had McDonald requested one while he was in jail awaiting trial. Thus there is no basis in the record for a finding of reversible error.

Next, it is argued that the knife and towel were obtained by an illegal search and should not have been admitted in evidence. The search was not illegal, being incident to a lawful arrest. Immediately after the occurrence the prosecutrix reported it to the police, who broadcast a description of the offender. Within a few minutes Officer Simmons saw McDonald (whom he recognized from the description) running down a sidewalk in the prosecutrix's neighborhood. When McDonald jumped over a fence and started across a yard the officer drew his pistol and ordered McDonald to halt. McDonald at once returned to the sidewalk, where the officers searched him and found the knife and towel.

Counsel is mistaken in arguing that there was no arrest simply because the officers did not use the word "arrest" before making the search. It is the actual restraint, or consent to restraint, that constitutes an arrest. *Sibron* v. *New York*, 392 U.S. 40 (1968); *Henry* v. *United States*, 361 U.S. 98 (1959); Ark. Stat. Ann. § 43-412 (Repl. 1964). Here McDonald was unquestionably being restrained when the search was made. The broadcast description gave the officers probable cause for the arrest. The articles were therefore admissible, having been obtained as an incident to the arrest. *Bailey* v. *State*, 238 Ark. 210, 381 S.W. 2d 467 (1964).

We cannot say that the sentence to imprisonment for 30 years is excessive or that it constitutes cruel and unusual punishment. Formerly the punishment for rape was death or life imprisonment. By Act 362 of 1967, Ark. Stat. Ann. § 41-3403 (Supp. 1971), the legislature fixed the punishment at death or from 30 years to life imprisonment. This appellant received the minimum sentence. Inasmuch as the determination of the limits of punishment lies peculiarly within the legislative province, we have no basis for disturbing the verdict. *Black* v. *State,* 244 Ark. 37, 423 S.W. 2d 544 (1968); *Osborne* v. *State,* 237 Ark. 5, 170, 371 S.W. 2d 518 (1963).

About six months after the trial a Texarkana newspaper published a letter to the editor, written by Mrs. E. D. Ray. Mrs. Ray stated in the letter, and repeated at a hearing upon a motion for new trial, that during a recess in the trial two women who were on the jury sat down next to Mrs. Ray in the hall outside the courtroom. A man walked up to the women and said: "Well, how do you think it's going to come out? I'm pretty sure it's going to be guilty." It is now asserted that Mrs. Ray's testimony demonstrated such misconduct on the part of the jurors as to require a new trial.

Mrs. Ray's testimony is so vague and indefinite as to be entitled to little weight. She waited, without adequate excuse, for some six months before mentioning the matter. She did not explain how she knew the two women to be jurors, for she did not go into the courtroom, She did not identify either of the women, or the man who assertedly spoke to them. If such flimsy and inconclusive testimony, given months later by a bystander who is unable to supply details subject to verification, mandatorily requires a new trial, then it is evident that criminal convictions lose the stability that is essential to the administration of justice. The trial court was right in refusing to order a new trial on the basis of Mrs. Ray's testimony. That conclusion is also applicable to asserted discrepancies in the testimony of the prosecutrix's 14-year-old daughter, who was not an eyewitness to the offense and actually gave no testimony of material value.

Affirmed.

## Supplemental Opinion on Denial of Rehearing delivered March 5, 1973

ARREST—AUTHORITY WITHOUT A WARRANT—GROUNDS.—A radio broadcast upon an informer's tip may not be sufficiently reliable to constitute probable cause for an arrest without a warrant but when the victim of a rape reports the occurrence to police and provides a description of the offender, police officers are expected to act upon this type of complaint which constitutes probable cause.

GEORGE ROSE SMITH, Justice, on rehearing. Within the time allowed for the filing of a petition for rehearing the appellant filed a pleading and brief entitled a "Motion to Commence a [Criminal Procedure] Rule 1 Hearing." Since the motion is in substance a petition for rehearing, arguing points of law discussed in our opinion, we so treat it.

We think it appropriate to comment further on one of the points that are reargued. In our original opinion we sustained a search of the appellant's person as being incident to his arrest. The arresting officer relied upon information contained in a police radio broadcast, which in turn was based upon the report of the crime that had been made by the prosecutrix to the police.

In the petition for rehearing there is cited for the first time the decision in *Whiteley* v. *Warden*, 401 U.S. 560 (1971). The appellant argues, on the strength of that case, that a warrantless arrest based upon a police radio bulletin is not permissible.

We cannot agree with that interpretation of the *Whiteley* opinion. There the radio broadcast was based upon an informer's tip that was not shown to be sufficiently reliable to constitute probable cause for the arrest. As the court said: "[T]he record is devoid of any information at any stage of the proceeding from the time of the burglary to the event of the arrest and search that would support either the reliability of the informant or the informant's conclusion that these men were connected with the crime. . .

"We do not, of course, question that the Laramie police were entitled to act on the strength of the radio

bulletin. Certainly police officers called upon to aid other officers in executing arrest warrants are entitled to assume that the officers requesting aid offered the magistrate the information requisite to support an independent judicial assessment of probable cause. Where, however, the contrary turns out to be true, an otherwise illegal arrest cannot be insulated from challenge by the decision of the instigating officer to rely on fellow officers to make the arrest."

We think the *Whiteley* rule was accurately summarized in *Peterson* v. *State*, 15 Md. App. 478, 292 A. 2d 714 (1972), where the court said:

> "*Whiteley* stands for the broad principle that a police officer, with proper justification for an arrest or a search (with or without a warrant), may multiply his available arms and legs to excute his purpose by calling upon other policemen to aid him. . . . He does not have to impart to each of his executing agents the building blocks of probable cause that mounted up to his justification. The immediate holding of *Whiteley* was that, just as a justification for police action is not diminished in transmission, neither is it enhanced. If the justification is adequate at the point where the message is transmitted, it is no less so at the point where the message is received. Conversely, if the justification is inadequate at the point where the message is transmitted, that inadequacy endures and will not somehow be dissipated on the wires or on the airwaves. In transmission nothing is lost and nothing is gained."

In the case at bar the broadcast was not based, as in *Whiteley*, upon an informer's tip of questionable veracity. Here is was the victim of the rape who reported the occurrence to the police and provided a description of the offender. Firsthand information of that kind is precisely the type of complaint upon which police officers are expected to act. We have no doubt that it constituted probable cause for the arrest.

Rehearing denied.