Harold Eugene ROGERS *v.* STATE of Arkansas

CR 74-59                                        515 S.W. 2d 79

Opinion delivered October 21, 1974
[Rehearing denied November 18, 1974.]

*George Howard Jr.*, *Sharon Bernard Miller* and *Nathaniel R. Jones*, *James I. Meyerson*, *George E. Hairston* (NAACP), New York City, with assistance from *Mrs. Pat Tobin*, law intern, NAACP, Cornell University, for appellant.

*Jim Guy Tucker*, Atty. Gen., by: *O. H. Hargraves*, Dep. At-

ty. Gen., for appellee.

FRANK HOLT, Justice. A jury convicted appellant of first degree rape (Ark. Stat. Ann. § 41-3401 [Supp. 1973]) and assessed his punishment at life imprisonment in the State Department of Correction. For reversal of that judgment appellant first contends that the trial court erred in not allowing sufficient voir dire examination by his defense counsel to permit an intelligent exercise of his right to make an informed decision whether to challenge the veniremen peremptorily or for cause.

The purpose of voir dire examination is to provide the litigants sufficient information about the proposed juror to intelligently exercise their challenges peremptorily or for cause. *Griffin* v. *State*, 239 Ark. 431, 389 S.W. 2d 900 (1965). The due process clause of the federal Fourteenth Amendment requires that counsel be permitted to interrogate the prospective jurors about racial bias. *Ham* v. *South Carolina*, 409 U.S. 524, (1973). In *Cochran* v. *State*, 256 Ark. 99, 505 S.W. 2d 520 (1974), two defendants were convicted of assaulting a white officer during an assemblage or riot. The court generally inquired of the jurors as a group whether the difference in race would tend to influence their verdict. Their silent response was accepted by the court as indicating the racial difference would not influence their verdict. The defense counsel was not permitted to inquire into possible racial prejudice. There we held the trial court abused its discretion by unduly restricting the voir dire.

In the case at bar the appellant is a black man and the rape victim is a white woman. In two instances appellant asserts specifically that his voir dire was unduly restricted. The first example relates to the examination of prospective juror Siebenmorgan. The appellant's defense counsel, without objection or interruption by the court, was permitted to propound questions bearing directly on the issues of his mental attitude toward any racial bias. Siebenmorgan responded that he did not "have any racial prejudice;" he would not "believe a white police officer any more than [he] would believe a black man"; he would not "believe a white woman any more than [he] would believe a black man;" he did not "think there's any difference between black people and white people;" his children attended "public schools"

which are "integrated;" he is a Catholic and there are "black members" in his church; he had never had an unfortunate experience with a black man and neither had his family; and he had never had any problem with "interracial social gatherings." Then the question was propounded "would you have any problem with your daughter dating a black man?" The court then remarked that he did not think this type of questioning "has anything to do with this law suit." However, he then permitted the question to be answered. The juror responded that it would present a problem. However, the prospective juror then assured defendant's counsel that the problem "would have no bearing on this case." When the counsel persisted in this type of questioning, the court stated "[N]ow, I think we've gone into that far enough. You've asked him enough. As I explained at barside here, I think I've allowed counsel great latitude ****."

The other example asserted as being too restrictive of voir dire examination relates to prospective juror Bartley. Appellant's counsel was permitted to question him with reference to racial prejudice. In answer to these questions this prospective juror stated that he didn't "have any racial prejudice;" there is no "difference between a black and white person" except "color;" he did not believe black people are "lazier" or "less intelligent" than white people; he did believe black people were "better athletes" than white people. Thereupon the trial court interrupted and said it was not necessary to answer that question since it was not proper voir dire.

As previously indicated, appellant contends that his counsel should have had the right to further pursue the interrogation of these witnesses in order to make an informed decision as to whether to challenge these jurors peremptorily or for cause. In other words, his counsel was not permitted to show "subtle prejudices" or "subjective racism" which these two jurors might have. It is well established that the trial court is accorded a wide discretion in determining the extent or scope of the interrogation of prospective jurors. *Lauderdale v. State*, 233 Ark. 96, 343 S.W. 2d 422 (1961). There the defendant was being tried for dynamiting a building during a racial school crisis. After extensive questioning of the jurors by defense counsel as to their racial views, the trial court refused to permit the question "are you a segregationist or an

integrationist" to be propounded to the jurors. There we said that such a question "would have no bearing on his fairness as a juror to sit in the trial of a case being tried for dynamiting a building" and "would ————— inject an issue not pertinent to testing the capacity and competency of the jurors and would have tended to create a bias or prejudice that would also have embarrassed the veniremen."

In the case at bar, the transcript reveals that the voir dire consisted of approximately 473 pages and the court permitted most of this to be conducted by the defense counsel. In our view the trial court accorded the defense counsel great latitude in questioning the prospective jurors in a searching inquiry as to the existence of any subtle or subjective bias that would prevent a juror from rendering a fair and impartial verdict. The appellant has not demonstrated that he was denied any fundamental fairness in interrogating the jurors in order to make an informed decision whether to challenge the veniremen peremptorily or for cause. The trial court did not abuse its discretion.

Appellant also asserts that it was error since the trial court failed to interrogate the prospective jurors about their racial attitudes, citing *Ham* v. *South Carolina, supra.* We do not consider this case applicable in the case at bar inasmuch as the statutory framework in that state provides for the voir dire examination of potential jurors be conducted by the court after accepting questions from the attorneys. That does not exist in our state. *Griffin* v. *State, supra.* Furthermore, the appellant has not demonstrated that the trial court was ever asked to conduct the voir dire examination. Therefore, the issue is raised for the first time on appeal and cannot be considered. Appellant's defense counsel, as previously indicated, was permitted to question extensively the prospective jurors with reference to any possible racial bias.

Appellant next asserts that the "trial court erred in denying defense counsel's motion for a mistrial based on the state's exercise of its peremptory challenges to systematically exclude black persons from the jury in violation of the appellant's Fourteenth Amendment rights." Six of the seven prospective jurors which were peremptory challenged by the state were black. This resulted in an all white jury. In *Swain* v. *State of Alabama,* 380 U.S. 202 (1965), a black man was con-

victed of raping a white woman and sentenced to death. All six prospective black jurors were struck by the prosecutor by peremptory challenges. In affirming the conviction the court held that this procedure did not constitute a violation of the Fourteenth Amendment, " . . . we cannot hold the striking of negroes in a particular case is a denial of equal protection of the laws. In the quest for an impartial and qualified jury, Negro and white, Protestant and Catholic, are alike subject to being challenged without cause." " . . . . [We] cannot hold that the Constitution requires an examination of the prosecutor's reasons for the exercise of his challenges in any given case." In *Jackson* v. *States,* 245 Ark. 331, 432 S.W. 2d 876 (1968), we followed *Swain* and stated the rule to be "[T]he mere fact that the state peremptorily challenged all the Negroes on the petit jury does not constitute a showing that any of appellant's constitutional rights were violated."

It appears that the prosecutor categorically denied that he was using his peremptory challenges merely to exclude blacks. The voir dire examination of the prospective black jurors peremptorily challenged by the state revealed that all of them except one were acquainted with either the appellant or members of his family. It appears that the other juror was reluctant to serve. The record reflects that blacks have consistently served as trial jurors. In *Swain, supra,* Justice White, writing for the majority, said:

> Although historically the incidence of the prosecutor's challenges has differed from that of the accused, the view in this country has been that the system should guarantee 'not only freedom from any bias against the accused, but also from any prejudice against his prosecution. Between him and the state the scales are to be evenly held.' *Hales* v. *Missouri,* 120 U.S. 68 (1887).

See also *Green* v. *States,* 222 Ark. 222, 258 S.W. 2d 56 (1953). In the case at bar we hold appellant has not demonstrated any systematic misuse by the state of its right to exercise its peremptory challenges.

Two prospective black jurors arrived late for the empanelment and they were not included in the drawing for the initial 24 jurors. Upon arrival their names were included "in the box." However, the initial empanelment was not redrawn

as requested by appellant. Furthermore, appellant complains that two black jurors did not report for jury duty because they were out of town or could not be contacted. There is no evidence whatsoever that the tardiness of the two jurors or the absence of others was due to any act on the part of any official of the state. Such a factual situation does not constitute a systematic exclusion from the jury. *Apodaca v. Oregon*, 406 U.S. 404 (1972).

Appellant next argues that there was an unwarranted reprimand to his defense counsel at a crucial point in the trial and that the court failed to maintain an impartial hearing, generally, throughout the proceedings. The following occurred on cross-examination of the prosecutrix:

Q. You remember who pulled it out? [tampax]

A. I pulled it out. I told him I was on my period, and I pulled it out. I didn't want him to push it up any farther inside me.

Q. When did he do his talking about Kansas City?

A. After he got through. After he reached his climax he set up and made me sit in his lap naked.

Q. How long did this take from the time that he put it in until—

A. Just a very short time.

Q. What were you doing?

A. I wasn't doing anything, I was just laying there.

Q. Where were your hands?

A. I don't know.

Q. Scratching?

A. No, I don't know.

Q. Biting?

A. No.

Q. Kicking?

A. No.

Q. Kissing?

A. No.

Q. Petting?

A. No.

Q. Did you scream out?

A. No.

Q. Why did you not cry?

A. I'm just not that way. When I'm scared I just don't say anything.

Q. Are you scared now?

A. Yes.

Q. Is it hard for you to cry now?

A. No.

Q. While you were sitting in his lap where were your hands?

A. Around his neck.

MRS. MILLER: Your Honor, maybe the prosecutrix would like a few minutes.

THE COURT: I beg your pardon?

MRS. MILLER: Maybe the prosecutrix would like a few minutes to get herself together.

THE COURT: Well, you got her this way. Why don't you go ahead.

Mr. Myerson: Your Honor, the defense would like to point out that we're not intentionally attempting to get her this way, and we would like for her to have an opportunity to get herself together.

THE COURT: I didn't know she appeared to be so distraught. Do you wish to recess?

A. No.

THE COURT: I beg your pardon?

The prosecutrix then said "I can finish." Thereupon the appellant's counsel moved for a mistrial on the basis of the court's remark before the jury that the "defense counsel having got this witness that way" is "highly prejudicial" which could not be removed from the juror's minds by a cautionary instruction. The court denied the motion. Appellant argues that the court's remark ridiculed the defense counsel and demonstrated a biased attitude which tended to adversely affect the appellant's rights before the jury. Prejudicial error is not committed by the court's remark unless it constitutes an "unmerited rebuke" giving the jury the impression that defense counsel is being ridiculed. *Davis* v. *State,* 242 Ark. 43, 411 S.W. 2d 531 (1967); *McAlister* v. *State,* 206 Ark. 998, 178 S.W. 2d 67 (1944); *Jones* v. *State,* 166 Ark. 290, 265 S.W. 974 (1924). However, prejudice is not shown where the record reveals that the trial judge was merely irritated at defense counsel's trial tactics. *Walker* v. *Bishop,* 408 F. 2d 1378 (8th Cir. 1969). Although the better practice, as we have often said, is to talk to counsel out of the jury's hearing, we do not construe this remark as ridiculing the appellant's counsel. The court merely was stating the obvious. By terse questioning on cross-examination, the defense counsel was properly attempting to weaken the prosecutrix's testimony as a witness. The court's remark certainly did not relate to the merits of the case. At most, it could only be construed as a mere irritation which "does not constitute reversible error whether the court's irritation was justified or not." *Walker* v. *Bishop, supra.*

Further, where evidence of the defendant's guilt is convincing, we have affirmed convictions in spite of the fact that remarks made by the trial court were said to be improper. *Bates v. State,* 210 Ark. 1014, 198 S.W. 2d 850 (1947); *Tuttle v. State,* 83 Ark. 379, 104 S.W. 135 (1907); and 62 ALR 2d 206. In *Tuttle* the court stated to appellant's counsel " [T]hat is not the rule of evidence, and not the law, and never was the law, and you know it. *** This is not a backwoods justice-of-the-peace court, and I will not take up the time of the court with such questions." In the case at bar the evidence, which we later discuss, is amply sufficient to convince us that the verdict is responsive to the evidence and not to any extraneous matter such as the asserted prejudicial remark by the trial court. Moreover the court instructed the jury pertinent to this issue:

> I have not intended by anything I have said or done, or by any questions that I may have asked, to intimate or suggest what you should find to be the facts, or that I believe or disbelieve any witness who testified. If anything I have done or said has seemed to so indicate, you will disregard it.

Appellant contends that the trial court continually showed bias, making it impossible to conduct a fair and impartial trial. The record shows otherwise. A large part of the record contains the voir dire proceedings where the prospective jurors were questioned at length as to racial attitudes. The trial court permitted sufficient inquiry of the jurors to insure that appellant obtained a fair and impartial jury. The appellant complains only of two exceptions which we have previously discussed. The court cut bail in half and was willing to talk to counsel about reducing it further. In chambers the court remarked:

> This is the first time in my nineteen years as a judge that this [racism] — such a thing has been raised. I regret that it has been raised. We all try to get along together and live together, and help one another. But the most important thing in the world, in this courtroom, is to have the proper atmosphere in which to ascertain the truth, whatever the truth may be, and that's what I, as presiding judge, want.

Appellant's argument as to the bias of the trial court relates primarily to proceedings not in the jury's presence. Suffice it to say that we are of the view the trial was conducted in a fair and impartial manner.

Appellant next asserts for reversal that the trial court erred in admitting into evidence the testimony of Sonja Suter. We do not agree. Since the prosecutrix was unable to identify appellant, Mrs. Suter's testimony was permitted. In *Tarkington* v. *State*, 250 Ark. 972, 469 S.W. 2d 93 (1971), we held:

> If the crime charged has been committed by a novel means or in a particular manner, and the identity of its perpetrator is in issue and not otherwise conclusively established, evidence of a defendant's commission of a similar offense by that means or in such manner is admissible as tending to show identity of the perpetrator when the similarity of the means or manner employed logically operates to set the offenses apart from other crimes of the same general variety and tends to suggest that the perpetrator of one was the perpetrator of the other.

See also *King* v. *State*, 253 Ark. 614, 487 S.W. 2d 596 (1972); and *Montgomery* v. *State*, 251 Ark. 645, 473 S.W. 2d 885 (1971). In the case at bar, Mrs. Suter testified she was raped the night after the prosecuting witness was attacked. The circumstances of the alleged assaults are similar. Both victims were returning to their cars at nighttime from a grocery store when a black man, at gunpoint, abducted, blindfolded, and forced each of them to put their heads down as he drove their car to a garage where he raped them. Each was driven back to the grocery store parking lot and released. Appellant contends he did not offer an alibi or refute the charge, and another witness placed him at the scene of the crime. Therefore, appellant says his identity was not in issue, and Mrs. Suter's testimony was inadmissible. The prosecuting witness, however, could not identify her assailant. The other witness, who observed him at the scene, merely testified that he saw appellant with a white girl. Appellant's identity was not "conclusively established" as the person who raped the prosecutrix. Mrs. Suter did not identify appellant as the person who raped her the following night under similar cir-

cumstances. Therefore, we hold her testimony was relevant upon the issue of identity.

Appellant next contends that the evidence is insufficient to support the verdict of the jury. We first observe it is well established that on appeal we review the evidence and all reasonable inferences deducible therefrom most favorable to the appellee and affirm if there is any substantial evidence to support the jury's finding and verdict. *Stanley* v. *State,* 248 Ark. 787, 454 S.W. 2d 72 (1970). At approximately 9 p.m., the prosecutrix went to a grocery store to cash a check. When she returned to her car a black male accosted her with a gun, placed a cap over her face and forced her to ride on the passenger side with her head down. He then drove her car to a garage where he pushed her inside and onto a couch where she was told to undress. After undressing himself, he proceeded to fondle various parts of her body. She was required to remove a tampax and then he proceeded to have sexual intercourse with her without her consent. She did not struggle because she was fearful he would kill her. Afterwards her assailant drove her in her car back to the grocery store parking lot where she was released. She could not identify him although she got a glimpse of the surroundings at the garage and a momentary view of the interior of the garage. There was medical proof of recent intercourse. Since the prosecutrix could not identify the appellant as her assailant, Mrs. Suter was permitted to testify based upon the issue of identity. She identified the appellant as being the one who raped her the following night under similar circumstances. Both victims were able to identify the garage as being the place where the assaults were made upon them. There the tampax was found that the prosecutrix was forced to remove and a part of a thermometer case which had fallen out of Mrs. Suter's purse was also recovered. We hold the evidence was amply substantial to support the jury's finding that the prosecutrix was sexually assaulted in violation of Ark. Stat. Ann. § 41-3401 (Supp. 1973).

Appellant next asserts that a "sentence of life imprisonment without an opportunity for parole, imposed upon a first-offender minor, whose offense resulted in no physical harm to the victim, is so excessive and disproportionate to the illegal act as to constitute cruel and unusual punishment." We cannot agree. Appellant, 17 years old at the time of trial,

was sentenced to life imprisonment for first degree rape pursuant to Ark. Stat. Ann. § 41-3403 (Supp. 1973). However, a life sentence does not absolutely preclude the opportunity for parole. Ark. Stat. Ann. § 43-2807 (b) (Supp. 1973) provides for parole eligibility upon commutation to a term of years by executive clemency. Thereupon, the individual is "eligible for release on parole after serving one-third (1/3) of the time to which the life sentence was commuted, with credit for good time allowances." Until recently the penalty for rape was death or life imprisonment. However, by Act 362 of 1967 (41-3403, *supra*) the legislature provided that "[A]ny male, upon conviction of first degree rape, shall be subject to death or thirty (30) years to life imprisonment in the state penitentiary." Therefore, the legislature permitted the jury the latitude of fixing a lesser sentence than formerly. Appellant presents the argument that the punishment of life imprisonment fixed by the jury is too harsh and cruel because the prosecutrix suffered no serious or permanent physical harm. Appellant recognizes that no one can deny that rape is one of the most morally reprehensible criminal offenses and, historically, the act has been the subject of the most severe penalties and public condemnation. In the case at bar, as previously indicated, the prosecutrix was abducted at gunpoint, subjected to indignities and raped. The jury is in the better position to evaluate the physical abuse as well as any mental anguish experienced by the prosecutrix as a result of her ordeal. Appellant acknowledges that recently in *McDonald* v. *State*, 253 Ark. 812, 491 S.W. 2d 36 (1973), we reaffirmed the generally prevailing view that if a sentence is within the limits established by the legislature, it is valid even though it is insisted that the punishment is unconstitutionally excessive. There we said "[I]nasmuch as the determination of the limits of punishment lies peculiarly within the legislative province, we have no basis for disturbing the verdict." To the same effect is *Osborne* v. *State*, 237 Ark. 5, 371 S.W. 2d 518 (1963); *Randle* v. *State*, 245 Ark. 653, 434 S.W. 2d 294 (1968); and *Patterson* v. *State*, 253 Ark. 393, 486 S.W. 2d 19 (1972).

In the case at bar, the testimony, as previously discussed, is amply substantial to support the jury verdict. The punishment assessed was within the limits prescribed by law and less than the maximum. It was for the jury to exercise the right and authority vested in it by our legislature and constitution. Therefore, we hold that the penalty imposed by the

jury is not cruel and unusual punishment. As previously indicated a life sentence is not without any opportunity for parole eligibility since executive clemency is available by a commutation of sentence.

Affirmed.

BYRD, J., dissents.

CONLEY BYRD, Justice, dissenting. I would reverse and remand this case for a new trial because of the trial court's remarks to appellant's counsel during the cross-examination of the prosecutrix. It must be remembered that the burden was upon the State to prove to the jury beyond a reasonable doubt that appellant had intercourse with the prosecutrix "by forcible compulsion."

Mac Chambers, a witness called by the State, testified that he lived near the garage where the alleged rape took place and that on the night of October 31, the defendant asked the witness to take him to Piggley Wiggley. When the witness got outside the defendant got in a car with a white girl and the witness followed the defendant to Piggley Wiggley. Upon arriving at the Piggley Wiggley, the defendant sat in the car and talked to the girl awhile before he got into the witness' car. The next night at about the same time the appellant and a white girl walked upon the porch where the witness lived. This time at the request of appellant, witness followed appellant to Kroger. Witness described the girl on the second night as smiling when he saw her. Stated that the girl was not scared. Witness also testified that there were a number of stop signs between his house and the Piggley Wiggley and that appellant stopped at each stop sign.

On direct the prosecutrix had testified that upon arriving at a garage the appellant tied her hands behind her back with a rope and pulled my blouse, that I was wearing, over my face. On cross-examination the prosecutrix stated appellant started to take off my blouse at first, but I just took it off myself. Thereafter, the cross-examination continued as set out in the majority opinion and culminated with the prosecutrix testifying that she was sitting on the appellant's lap while nude and with her arms around his neck. At that

time the following occurred:

> "Mrs. Miller: 'Your Honor, maybe the prosecutrix would like a few minutes.'
>
> The Court: 'I beg your pardon?'
>
> Mrs. Miller: 'Maybe the prosecutrix would like a few minutes to get herself together.'
>
> The Court: 'Well, you got her this way. Why don't you go ahead.' "

These remarks on the part of the trial court, although not necessarily intended, could be construed as showing some irritation in counsel's manner of interrogation and that it went beyond the bounds of propriety. In dealing with a remark of a trial court to counsel in *McAlister v. State,* 206 Ark. 998, 178 S.W. 2d 67 (1944), we stated the general principle as follows:

> "'No principle is better settled than that a judge presiding at a trial should manifest the most impartial fairness in the conduct of the case. Because of his great influence with the jury, he should refrain from impatient remarks or unnecessary comments which may tend to result prejudicially to a litigant or which might tend to influence the minds of the jury. By his words or conduct he may, on the one hand, support the character and weight of the testimony or may destroy it in the estimation of the jury. Because of his personal and official influence, uncalled for or impatient remarks, although not so intended by him, may give one of the parties an unfair advantage over the other.' 'We are not unaware that many things occur during the trial of a case to fray and irritate the nerves of the presiding judge, and that he is not immune to the natural frailties of humanity, but because of his position he must exercise the greater forbearance and patience.'"

We constantly hold that there is a presumption that every error is prejudicial, unless it is demonstrated otherwise. See *Arkansas Highway Comm. v. Jensen,* 253 Ark. 795, 489 S.W.

2d 5 (1973), where we stated:

". . . The presumption is that error is prejudicial unless it is shown otherwise or manifestly is not..."

The majority's bald assertion that they "do not construe this remark as ridiculing appellant's counsel" does not show that the court's demonstrated irritation had no effect in discrediting the testimony elicited on cross-examination. As pointed out in *McAlister* v. *State, supra,* a trial judge because of his great influence with the jury: "By his words or conduct he may, on the one hand, support the character and weight of the testimony or may destroy it in the estimation of the jury." Here I cannot say that the record manifestly shows that the trial court's expressed irritation did not prejudice either appellant's conviction or the extent of his punishment. It certainly did not help appellant. Consequently I would reverse for a new trial on this one issue.

For the reasons stated I respectfully dissent.