PHILLIP T. WHITEAKER, Judge
Appellant Dermarius Blanks was convicted by a Drew County jury of one count each of aggravated residential burglary, aggravated robbery, and theft of property valued at less than $1,000; he was sentenced to twenty years in the Arkansas Department of Correction. On appeal, Blanks does not challenge the sufficiency of the evidence. Instead, he argues that the circuit court erred in (1) refusing to provide a remedy for a discovery violation, and (2) refusing to grant a mistrial for its unmerited rebuke of counsel in front of the jury. We affirm.
I. Mistrial Based on Discovery Violation
In his first argument on appeal, Blanks argues that the circuit court erred in denying his motion for mistrial based on a purported discovery violation. Although Blanks does not challenge the sufficiency of the evidence, a brief recitation of the evidence is helpful here to understand the context of his argument. Blanks, Rodney Payne, and Jessica Dodson conceived a plan to rob Lamichael Wigfall.[1] On the day of the robbery, Dodson had spent time at Wigfall's home. Later that day, Payne and Blanks entered Wigfall's home uninvited. They were armed, pointed guns at Wigfall, robbed him, and then fled from the house. Law enforcement investigated the robbery. As a part of the investigation, Wigfall told the police that he had been robbed by two assailants. He identified one as Payne and the other as a man he knew as "Demo."
At trial, Wigfall testified about the events of the robbery and his identification of his assailants. He stated that the man whom he called by the nickname "Demo" is Blanks. Wigfall explained that he had known Blanks for six or seven years, although he conceded that he never knew him by any name other than his nickname. He nonetheless identified "Demo" as the defendant sitting in the courtroom. On cross-examination, Wigfall admitted that "Demo" had a bandana over his forehead during the robbery, but it did not cover his face. Wigfall was adamant that the robber was "Demo because I know him. And I know who came in my house."
Blanks asserts that the purported discovery violation occurred during the State's redirect examination of Wigfall. During redirect, the State asked Wigfall to recount everything that happened after he encountered the police following the robbery. Wigfall responded that while he was at the police station, he identified "Demo" and "pointed him out in a lineup." Blanks immediately objected that he had not been provided with a lineup in discovery. Before the court ruled on the objection, Wigfall stated, "It wasn't really a lineup. They just pulled his picture off of Facebook." Without specifically ruling on the objection, *867 the court directed the State to continue with its redirect. Blanks then conducted further cross-examination during which Wigfall reiterated that law enforcement showed him a Facebook photo to identify Blanks and that he identified the person in the photo as "Demo."
Blanks once again alleged a discovery violation. He admitted that discovery provided by the State included some Facebook photos, but he asserted that there was nothing to indicate that these photos were used in the pretrial identification process and that this constituted a discovery violation. Blanks argued that the use of the photographs by the police, without their disclosure to the defense, constituted a discovery violation and was "something we should have been made aware of" so that the matter could have been dealt with before trial. The court disagreed. It did, however, agree to allow Blanks to question Wigfall further about the photos once the jury retired to deliberate.
Subsequently, outside the presence of the jury, Blanks elicited a proffer of testimony from Wigfall. Wigfall was shown three photographs taken from Facebook that had been communicated to the defense during discovery. Wigfall said that none of those photos was the one that the police had shown him after the robbery. He repeated his testimony that he advised the police that it was "Demo" who robbed him; the police then pulled up some pictures from Facebook and asked whether the picture was of "Demo," and Wigfall said that it was.
At that point, Blanks moved for a mistrial. He argued that the photograph the police showed Wigfall was an important part of his identification, and without having been given a copy of the photo in discovery, there was no way to attack Wigfall's actual identification of "Demo"-i.e., whether the Facebook picture was of Blanks or of someone else. The court denied the mistrial motion, ruling that Wigfall was "sure about who he was talking about, they didn't need a lineup for him to be sure."
In his first argument on appeal, Blanks argues that the circuit court erred in denying his motion for mistrial based on the alleged discovery violation. Our standard of review for denials of mistrials is well settled. A mistrial is an extreme and drastic remedy that will be resorted to only when there has been an error so prejudicial that justice cannot be served by continuing with the trial or when fundamental fairness of the trial has been manifestly affected. Bullock v. State , 2018 Ark. App. 118, at 5, 544 S.W.3d 566, 570 (citing McClinton v. State , 2015 Ark. 245, 464 S.W.3d 913 ). Declaring a mistrial is proper only when the error is beyond repair and cannot be corrected by any curative relief. Id. The judge presiding at trial is in a better position than anyone else to evaluate the impact of any alleged errors. Id. Therefore, the circuit court has wide discretion in granting or denying a motion for mistrial, and the decision of the circuit court will not be reversed except for abuse of that discretion or manifest prejudice to the complaining party. Id.
As a preliminary issue, Blanks's argument on appeal is that the discovery violation "required a remedy, but none was given." His argument relies on an underlying premise-that a discovery violation occurred. We note that the court never specifically ruled that a discovery violation occurred, and the State argues that such a violation did not occur; therefore, no remedy was needed. We need not decide this issue, however. Even assuming the State's failure to disclose the Facebook photo to the defense constituted a violation of the rules of discovery, we affirm the circuit court because Blanks sought only the drastic *868 remedy of a mistrial rather than a less extreme remedy that might have cured any resulting prejudice.
Arkansas Rule of Criminal Procedure 19.7(a) sets forth the remedies available to a court in connection with a discovery violation:
If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule or with an order issued pursuant thereto, the court may order such party to permit the discovery or inspection of materials not previously disclosed, grant a continuance, prohibit the party from introducing in evidence the material not disclosed, or enter such other order as it deems proper under the circumstances.
Here, Blanks argues that the "effective remedies available to the trial court upon the initial revelation of the discovery violation in this case were simple: produce the photograph or continue the trial to allow it to be produced." Blanks did not raise this argument below or request either of those remedies; instead, he sought only the drastic remedy of mistrial.
Our supreme court has previously addressed a similar issue. In Snell v. State , 290 Ark. 503, 721 S.W.2d 628 (1986), appellant Snell challenged the denial of his mistrial motion that was based on the State's withholding of allegedly exculpatory material. The supreme court affirmed the denial of the mistrial, noting that Snell had not sought "any of the sanctions provided for in Rule 19.7, such as a continuance, choosing instead to ask only for mistrial, the most extreme recourse open to a trial court." Snell , 290 Ark. at 512, 721 S.W.2d at 633. Likewise, in Thompson v. State , 322 Ark. 586, 589, 910 S.W.2d 694, 696 (1995), the supreme court affirmed the denial of the defendant's motion for mistrial, which was the only relief sought in response to a discovery violation, because "[a] mistrial is an extreme sanction for a Rule 17.1 violation and is to be avoided unless the fundamental fairness of the trial itself is at stake."
Blanks relies on Vilayvanh v. State , 2012 Ark. App. 561, in support of his argument that the circuit court erred in denying his request for a mistrial. We disagree that Vilayvanh supports his argument. In Vilayvanh , the defendant alleged a discovery violation involving a missing videotape and requested a mistrial. The circuit court denied the mistrial but offered the options of a continuance or other appropriate orders to locate the videotape. The defendant refused the other remedial options offered by the court and sought the sole remedy of a mistrial. This court affirmed, concluding that the lesser remedies offered by the court "could have settled the questions of whether a copy of the surveillance video was actually received by the police and, if so, whether the video was in fact exculpatory.... Given that appellant refused lesser remedies that would have permitted the trial court to determine whether he had been prejudiced, denial of a mistrial was manifestly within the trial court's discretion." Id. at 5.
We conclude that Vilayvanh supports our decision to affirm the circuit court's denial of Blanks's mistrial motion. Blanks sought only one remedy-a mistrial. A mistrial is the most extreme recourse open to a circuit court and is to be avoided except when the fundamental fairness of the trial itself is at stake. When a lesser remedy, such as a continuance to locate and examine the Facebook photograph, could have cured the alleged discovery violation, we cannot say that it was error for the circuit court to refuse the mistrial in these circumstances.
*869 II. Mistrial Based on Comments to Defense Counsel
In his second point on appeal, Blanks argues that the circuit court improperly chastised his counsel in front of the jury and erred in denying his ensuing motion for mistrial based on the court's comments. Here, Blanks assigns error to the court's behavior during two separate encounters during the trial, both of which occurred during the testimony of Detective Walter Hollinger.
In the first encounter, as Hollinger testified about how the police developed Blanks as a suspect, he stated that the victim had told police he knew his assailant. Blanks raised a hearsay objection, and the court suggested that Hollinger "[could] just say, I developed a suspect based on what-." Defense counsel objected again, and the following colloquy ensued:
DEFENSE : I'm going to object to you telling the witness what to say.
COURT : I'm not telling him what to say; I'm simply telling him what he was asked and that he can simply state who he developed-
DEFENSE : That is commenting on the evidence. I have an objection. It's a hearsay objection. I'm asking for a ruling on that.
COURT : You have. It's overruled.
DEFENSE : Okay, so-
COURT : When I overrule it that means you sit down.
DEFENSE : Well-
COURT : That's what it means. Unless you want the bailiff to help you sit down.
DEFENSE : Judge, I'm asking can I make a record.
COURT : Bailiff, help him sit down. When I rule, that's the end of it.
DEFENSE : I didn't hear your ruling, your honor.
COURT : Now, go ahead. You did. Go ahead.
Defense counsel moved for a mistrial, arguing that the court's directing the bailiff to help him sit down "hurts my client in front of the jury" and "embarrassed me in front of this jury unnecessarily as if I was doing something wrong." The court denied the mistrial without further comment.
In the second encounter, the State attempted to introduce a duffel bag into evidence. The State argued that the bag contained a jacket with Blanks's name on it, thus establishing that the bag belonged to Blanks. Defense counsel objected, saying "it doesn't establish that it belongs." The court admonished counsel not to engage in speaking objections but "just object, lack of foundation." The court declined to allow the State to introduce the bag at that juncture and directed it to lay a better foundation. Defense counsel continued to object, and the court advised counsel that "[i]f you stand up and do this again and interrupt this court, I will recess the jury and will deal with it in that manner." Counsel asked to approach, but the court refused to allow it, stating, "Ladies and gentlemen of the jury, we're going to take a ten-minute recess. It'll go better when you get back."
Once the jury had left the courtroom, the court explained to defense counsel that it believed counsel was being unnecessarily argumentative and confrontational with the court after the court made its rulings. The court stated that its options were to let counsel continue to disrupt him or hold counsel in contempt, which would result in the court's having to declare a mistrial, which it declined to do.
On appeal, Blanks argues that the circuit court abused its discretion in denying his motion for mistrial because the circuit court's "unmerited rebuke" could have *870 negatively impacted the jury's impression of defense counsel and, by extension, the defendant. We address only the first encounter and colloquy between the court and defense counsel, however, because counsel did not specifically move for a mistrial with respect to the second exchange. See Thornton v. State , 2018 Ark. App. 33, at 10, 539 S.W.3d 624, 630 (noting that a motion for mistrial must be raised at the first opportunity, and because defendant never expressly asked for a mistrial, his arguments were not preserved for appeal). Although the court sua sponte fulminated that it would not declare a mistrial, the record is clear with respect to this second exchange that there was no express motion for mistrial.
We now turn to Blanks's argument regarding his attorney's first exchange with the court. Our supreme court has stated that a circuit court's remarks do not amount to prejudicial error unless those remarks constitute an "unmerited rebuke" giving the jury the impression that defense counsel is being ridiculed. Echols v. State , 326 Ark. 917, 972, 936 S.W.2d 509, 537 (1996). Prejudice is not shown, however, when the record reveals that the circuit court was merely irritated at defense counsel's trial tactics. Id.
In McDaniel v. State , 283 Ark. 352, 676 S.W.2d 732 (1984), the supreme court explained as follows:
This court has decided many cases involving remarks by a judge to counsel. On one hand, we have consistently reversed where there was an unmerited rebuke which gave the jury the impression that counsel was being ridiculed. Davis v. State , 242 Ark. 43, 411 S.W.2d 531 (1967). Examples of unmerited rebukes which ridiculed counsel and caused reversal are: You are "facilitating a trial like a crawfish does, backwards," Jones v. State , 166 Ark. 290, 265 S.W. 974 (1924) ; "To grant your motion would be just silly," and "I am not going to put up with any more of this foolishness," McAlister v. State , 206 Ark. 998, 178 S.W.2d 67 (1944) ; "... these men here on the jury have something else to do besides listen to that," Fuller v. State , 217 Ark. 679 at 681, 232 S.W.2d 988 (1950).
On the other hand, we recognize that the trial court has the responsibility for the proper conduct of the trial and we find no reversible error where the record reveals that the trial judge was merely irritated at defense counsel's trial tactics. Rogers v. State , 257 Ark. 144, 152, 515 S.W.2d 79, 84 (1974). For example, in Rogers , supra , the defense counsel cross-examined a prosecutrix in such a manner that she began to cry. Defense counsel then stated that the prosecutrix needed a few minutes to get herself together. The judge responded, "Well, you got her this way. Why don't you go ahead?" The judge's inquiry in the case now before us amounted, at the most, to a showing of irritation at defense counsel's trial tactics and did not constitute an unmerited rebuke which ridiculed the attorney.
McDaniel , 283 Ark. at 356-57, 676 S.W.2d at 735-36.
Here, we are not convinced that the comments from the court to counsel constituted an unmerited rebuke that ridiculed counsel, necessitating a reversal. As an appellate court, we do not possess the ability to see or hear exactly what transpired in the courtroom between the court and the attorney; we can rely only on the written words in the record. It is apparent from the written record, however, that the court was exasperated with counsel. It is also apparent from the written record that the court believed counsel was being argumentative with the court's rulings, and the *871 court was frustrated with counsel's tactics.[2] On the record before us, however, we are unable to conclude that the court's frustrated comments to counsel amounted to remarks[3] that could be "construed as a reflection upon counsel's knowledge and skill as a lawyer." Davis , 242 Ark. at 45, 411 S.W.2d at 537. We therefore cannot say that the circuit court's denial of Blanks's mistrial motion amounted to a reversible abuse of discretion.
Affirmed.
Gruber, C.J., and Brown, J., agree.

Blanks, Payne, and Dodson were all charged as codefendants in these crimes. Dodson accepted a guilty plea, and Payne's case was severed from Blanks's.

After the second encounter, the circuit court recounted at length its experience with trial counsel in this case, noting that it had granted numerous continuances even though they had not been timely requested. The court also observed that counsel had previously tried unsuccessfully to be relieved from representing Blanks.

Here, as noted above, the court remarked: "When I overrule, that means you sit down"; "Unless you want the bailiff to help you sit down"; and "Bailiff, help him sit down." We would caution the bench that while we do not find reversible error in this opinion, such comments may be viewed as intemperate.