(68 Misc. Rep. 503.)

### BENNETT v. HARRIS et al.

#### (Supreme Court, Appellate Term. July 28, 1910.)

1. WITNESSES (§ 246*)—EXAMINATION BY COURT—OBJECTION.

Where the court conducts a prolonged examination of a witness, which is such as to convey to the jury the impression that in the opinion of the court witness is unworthy of belief, counsel may make an objection, so that on appeal it may not appear he acquiesced in such examination.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 852-857; Dec. Dig. § 246.*]

2. TRIAL (§ 29*)—CONDUCT OF COURT.

A trial in which counsel for one of the parties is held up to ridicule by the court for making proper objections, and is unjustifiably threatened with punishment by fine and imprisonment, and is denied a hearing on relevant matters, is not a fair trial; but the cause of such counsel's client is prejudiced.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 80-84; Dec. Dig. § 29.*]

Appeal from City Court of New York, Trial Term.

Action by Marie Bennett against Isaac Harris and another, copartners as under the name and style of the Triangle Waist Company. From a judgment on a verdict for plaintiff, and from an order denying a motion for new trial, defendants appeal. Reversed, and new trial ordered.

Argued before SEABURY, GUY, and BIJUR, JJ.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Jacob Rieger, for appellants.
John W. Browne, for respondent.

SEABURY, J. The judgment is challenged chiefly upon the ground of the alleged misconduct of the trial judge. Disagreeable as is the task of determining the merit of this contention, it is a duty which, in justice to the rights of the defendants and their counsel, cannot be ignored.

In the course of the examination of a witness, defendants' counsel said to the witness, "You keep on enlarging and enlarging," to which remark the counsel for the plaintiff objected. The following colloquy then took place:

"The Court: Sustained. Counsel is censured for making foolish remarks.

"Defendants' Counsel: I take an exception to your honor's remarks.

"The Court: If I have to sit here and listen to foolishness by counsel and not be allowed to reprehend it, I won't stand for this by counsel; and, if it happens again, I will fine you or commit you, and that will be subject only to habeas corpus, and not to a mere exception.

"Defendants' Counsel: May I respectfully except to your honor's remark?

"The Court: You may except to anything you like.

"Defendants' Counsel: I mean to these remarks.

"The Court: You may except to anything that you like, if you think it does you any good. I won't stand here or sit here and listen, as I say, to the remarks of counsel which they know to be improper, and rely upon the judge being a dummy, and not opening his mouth to the counsel's foolish remarks.

"Defendants' Counsel: I take an exception to the remark by the court and the insinuation that counsel assumes that the judge is a dummy, which I never did.

"The Court: You must if you think you can go on that way."

It seems to us clear that any one experienced in the work of the trial term must appreciate how unnecessary this colloquy was, and that, without adequate cause, it placed counsel for the defendants in the position of having been censured by the court, and threatened with fine or imprisonment.

Subsequently the court undertook a prolonged cross-examination of one of the defendants' witnesses. The examination was such as to plainly show that in the opinion of the court the defendants' witness was unworthy of belief. At the close of his examination the court directed the witness to "stand down," and the following colloquy took place:

"Defendants' Counsel: Now, if your honor please, I desire to state that in the examination, in the cross-examination conducted by your honor, I attempted to interrupt you, and you did not heed the interruption. I wanted to make an objection to your honor putting all these questions on cross-examination of the witness, for the reason that it is improper as tending to make an impression upon the jury that your honor didn't believe this witness.

"The Court: That is ridiculous, Mr. Rieger.

"Defendants' Counsel: I am making an objection.

"The Court: I have a right to examine any witness that comes to the stand.

"Defendants' Counsel: And I take an exception to your honor stating that my objection is ridiculous.

"The Court: I stated it. It is ridiculous and will not be heeded by the court or the jury, and there will be no objection noted. You may move to strike out the court's examination, but you should have objected before and

to each of the questions. The stenographer will note that the court refuses to allow an exception to the questions which are already asked and answered—

"Defendants' Counsel:　Out of respect—

"The Court:　Stop.　That the counsel may move to strike out the examination, and that motion is denied on the ground that no objection was made to the questions as they were put.

"Defendants' Counsel:　On the motion to strike out—

"The. Court:　That is enough.

"Defendants' Counsel:　Will your honor hear me?

"The Court:　That is enough.

"Defendants' Counsel:　I take an exception to your honor's refusal to hear me.

"The Court:　No; I will not hear any more from you at all.　You stand up again and make a remark to me that I think is insulting to the court. I will commit you to jail as sure as you are sitting in that chair.　I will commit you and not impose a fine, but a commitment for the full term.　I will not sit here and be insulted."

We think it unjust that counsel in endeavoring to protect the rights of his clients should be subjected to the treatment accorded to defendants' counsel in this case.　Counsel was within his rights in noting an exception to the examination by the court.　We do not mean to intimate that the court may not properly examine a witness.　Where, however, the court conducts a prolonged examination of a witness, and the examination is such as to convey to the jury the impression that in the opinion of the court the witness is unworthy of belief, counsel may note an objection, so that upon review upon appeal it may not appear that he acquiesced in such examination.　There was no disrespect to the court in the fact that an objection was made.　Nor did the fact that counsel made an objection merit the reply that it was "ridiculous." After twice telling the counsel that his objection was "ridiculous," the court proceeded to instruct him that he should have moved to strike the examination out and assume to deny such a motion, although it had not been made.　Counsel then attempted to speak "on the motion to strike out," and may have intended making such a motion as the court told him he might make, but the court twice refused to permit him to be heard.　When counsel excepted to the court's refusal to hear him, he was again threatened with a commitment to prison for the full term.　There were other improper remarks on the part of the trial judge, but it seems to us that enough has been quoted to show that in justice to the defendants this judgment should be reversed.

It is no part of our duty to prescribe the rules which should govern the conduct of a trial judge.　It is our duty to reverse any judgment properly before us which is not the result of a fair trial, and it is self-evident that misconduct on the part of a trial judge may make a fair trial impossible.　A trial in which counsel for one of the parties is held up to ridicule by the court for making proper objections and is unjustifiably threatened with punishment by fine and imprisonment and is denied a hearing upon relevant matters is not a fair trial.　An advocate subjected to such persistent discourtesy from the court is .embarrassed in the presentation of the cause of his client, and the cause of the client is palpably prejudiced in the eyes of the jury.　Every advocate who has been subjected to such an experience knows well its embarrassment and the serious manner in which it hinders a proper

discharge of his duties. Counsel are bound to treat the court with courtesy and respect. It is seldom that they fail in this duty. If they do, the court is clothed with ample power to punish such misconduct. When counsel perform this duty, they are entitled as a matter of right to courtesy from the court. If the discourtesy is so gross as to hold the advocate up to the ridicule of the jury and by unjustifiable threats of fine and imprisonment to embarrass the advocate in the discharge of his duty and to prejudice the jury against his client, the rights of the parties are impaired, and such conduct is on that account subject to review by an appellate tribunal. The judge upon a trial is not a mere figurehead. He has an active duty to perform. He may properly caution, correct, admonish, or criticise counsel during the trial, provided he acts in such a manner as not to subject counsel to contempt or ridicule or to prejudice the cause of his client in the minds of the jurors. Nor is it error for the court to punish counsel for contempt in the presence of the jury when the conduct of counsel justifies such action (Miller v. State, 32 Tex. Cr. R. 266, 22 S. W. 880), but an unjustifiable prosecution for contempt may constitute prejudicial error (Robertson v. State, 38 Tex. 187). The law wisely allows to the presiding judge a wide latitude in exerting his influence to the end that the trial shall be conducted in a suitable manner and that justice be done. The law to which the judge as well as all others are subject gives the judge no right to be insulting, or to hold counsel up to ridicule or to treat him in such a way as to prejudice the cause of his client. "We presume not," said the Supreme Court of Georgia, "to prescribe the manner of intercourse between the court and the bar. We leave that to the good sense and high breeding which so generally characterizes both, except when we find that it affects the rights of parties. Then it is within our corrective jurisdiction." Long v. State, 12 Ga. 295, 330. The advice of Lord Bacon is not without application here. "There is due from the judge," he said, "to the advocate some commendation and gracing, when causes are well handled and faire pleaded, especially towards the side which obtaineth not; for that upholds, in the client the reputation of his counsel, and beats down, in him, the conceit of his cause." Sergeant Ballantine, who was himself a sufferer from judicial discourtesy, in speaking of the importance of the demeanor of a judge when upon the bench says:

"He has no excuse for discourtesy. He naturally commands the respect and consideration of all present. Fractiousness and impatience seriously impair his usefulness. They produce nervousness in counsel of inexperience, who ought to be encouraged, if not out of kindness to themselves, for the sake of those to whom it is the duty of the judge to see, to the best of his power, that justice is done." Sergeant Ballantine's Experiences, p. 158.

In our opinion the conduct of the trial judge was prejudicial to the rights of the parties whose cause was on trial before him, and for this reason we think the judgment should be reversed and a new trial ordered.

Judgment and order reversed and a new trial ordered, with costs to the appellant to abide the event.

BIJUR, J., concurs. GUY, J., takes no part.