McALISTER *v.* STATE.

4330                                        178 S. W. 2d 67

Opinion delivered February 28, 1944.

*Oscar Barnett,* for appellant.

*Guy E. Williams,* Attorney General, and *Oscar E. Ellis,* Assistant Attorney General, for appellee.

KNOX, J. About 5:30 a. m., April 7, 1943, a police officer in Malvern, Arkansas, arrested one Richard Smith and placed him in a cell already occupied by appellant. A search of Smith, made by the officer, revealed that he had on his person seventeen dollars, which, after being counted, was returned to Smith. The officer testified that appellant was awake and watched him count the money; this was denied by appellant. About an hour after Smith was placed in the cell appellant (who was working out a fine) was taken from the cell and put to work cleaning up the jail. Still later in the morning he was taken out in the city and put to work on the streets. The chief of police being informed that the seventeen dollars belonging to Smith was missing, and suspecting appellant, went to the place where he was working to investigate. The chief testified that a search of appellant's person failed to disclose the money. At noon, when appellant was returned to the jail, he was questioned further, and finally stated that, while he

was sweeping the jail that morning, he swept up a lot of paper, and that in with this paper he found one five-dollar bill and twelve one-dollar bills; that he spent forty cents for tobacco and apples. He thereupon delivered the remaining $16.60 to the chief of police. At the trial appellant testified that when he found the money he did not know to whom it belonged; that he had no intention of stealing it; that when the officers first searched him they did not tell him they were looking for the money, and he didn't know that they were, and therefore he made no statement concerning the money at that time; that he was asleep when the officer placed Smith in the cell; that there were four prisoners in the cell.

Appellant was charged on information with the crime of grand larceny; was convicted and sentenced to two years imprisonment in the penitentiary; and from the judgment prosecutes this appeal.

Among other instructions given at the request of the state, the court, over the objection and exception of appellant, gave instruction No. 2, as follows: "You are instructed that if you find from the evidence in this case, beyond a reasonable doubt, that the defendant found the money, alleged to have been stolen, at the time mentioned in the information, and converted the same to his own use without voluntarily attempting to find the rightful owner thereof, and that he gave the money up only after pressure from the officers, then you are told to find the defendant guilty."

The duty imposed upon the finder of lost goods was fully discussed in an exhaustive opinion delivered by Chief Justice McCulloch in the case of Brewer v. State, 93 Ark. 479, 125 S. W. 127, 128 L. R. A., N. S., 339, 20 Ann. Cas. 1378. After reviewing a number of authorities on the question, Judge McCulloch says: "So the rule clearly deducible from the authorities is that if the finder of lost articles neither knows nor has any immediate means of ascertaining the owner, and appropriates them to his own use, he is not guilty of larceny, whatever may be his intent at the time. If he does

know, or has the immediate means of ascertaining, who the owner is, there must be a felonious intent to steal at the time of the taking in order to constitute larceny; and a subsequently formed intent is not sufficient.''

In the Brewer case the trial court had given an instruction as follows: ''If you believe from the evidence that the defendant found the pocket-book, and either knew or found out to whom it belonged, and on demand of the owner denied having it, or did not voluntarily return it to him, he would be guilty of larceny, and you should so find.''

Applying the rule summarized by him in the above quotation, Judge McCulloch declared this instruction erroneous because it ''conveyed to the minds of the jury the idea that if the defendant either knew or afterwards ascertained who the owner was and denied having the pocket-book, or failed to voluntarily return it, this made him guilty of larceny.''

We think instruction No. 2 as given in the case at bar is subject to the same criticism as the instruction held erroneous in the Brewer case. Under this instruction the jury was authorized to convict, even though they should believe from the evidence that the original taking was without felonious intent, if followed by a felonious asportation.

We are of the opinion that the giving of instruction No. 2 by the court constituted a reversible error.

Freeman Scott, the officer who placed Smith in jail, testified as a witness for the state. . . . After the defendant had testified to the effect that he was asleep when Smith was placed in jail, Scott was recalled by the state, and testified in rebuttal that appellant was at the time awake, and that he watched him count Smith's money. Cross-examining Scott on this rebuttal testimony, counsel for appellant asked if the other prisoners in the cell were also awake, and Scott testified that he did not recall that there were any other prisoners in the cell; that he was not sure, and could not tell without going to the city hall and looking at the jail records.

Thereupon counsel for the state objected to any further testimony relative to other prisoners being in the cell. The court sustained the objection; whereupon, in the presence of the jury, the following remarks passed between counsel for appellant and the court: "Mr. Barnett: It is his witness on rebuttal and you permitted him to testify, and I ask permission of the court to question this witness. The Court: To grant your motion would be just silly. Mr. Barnett: I object to the remarks of the court. The Court: Now, Mr. Barnett, I am not going to put up with any more of this foolishness. Your motion will be overruled, and you may save your exceptions."

We agree with appellant's contention that the remarks of the trial court constituted an unmerited rebuke of appellant's counsel in the presence of the jury which tended to prejudice appellant's rights. In the case of *Western Coal & Mining Co.* v. *Kranc,* 193 Ark. 426, 100 S. W. 2d 676, Mr. Justice BUTLER, speaking for the court, says: "No principle is better settled than that a judge presiding at a trial should manifest the most impartial fairness in the conduct of the case. Because of his great influence with the jury, he should refrain from impatient remarks or unnecessary comments which may tend to result prejudicially to a litigant or which might tend to influence the minds of the jury. By his words or conduct he may, on the one hand, support the character and weight of the testimony or may destroy it in the estimation of the jury. Because of his personal and official influence, uncalled for or impatient remarks, although not so intended by him, may give one of the parties an unfair advantage over the other." "We are not unaware that many things occur during the trial of a case to fray and irritate the nerves of the presiding judge, and that he is not immune to the natural frailties of humanity, but because of his position he must exercise the greater forbearance and patience."

At 64 C. J., p. 92, it is said: "Where counsel engaged in the trial of an action is guilty of impropriety or misconduct, a proper admonition, censure, or rebuke

by the presiding judge, in the presence and hearing of the jury, is ordinarily not prejudicial, where not couched in intemperate language, although it is ordinarily preferable that any rebuke be administered in the jury's absence. The judge is justified in using to counsel language sufficiently pointed and·emphatic to put an end to objectionable conduct, and some warmth or asperity in interchanges between counsel, and the court will not give ground for complaint, particularly in a hotly contested case.''

In the footnotes supporting the text the following cases are referred to *Weinberg* v. *Pavitt*, 304 Pa. 312, 155 Atl. 867, where is was held that the presiding judge should not unnecessarily belittle the argument of counsel; *Shafer* v. *Thurston Mfg. Co.*, 137 Atl. 2, 48 R. I. 244, to the effect that when counsel makes contentions which are deemed unsound, the trial court should overrule them with dignity, and should not use language holding counsel up to ridicule; *Bennett* v. *Harris,* 68 Misc. 503, 124 N. Y. Sup. 797, where it was held that the cause of the parties is prejudiced where the court states that an objection made by counsel is ridiculous.

Although it may be assumed that the trial judge did not intend that his remarks should in any way prejudice the rights of appellant, or influence the jury, still his choice of words was unfortunate. The words to grant your motion ''would just be silly'' doubtless was construed by the jury to mean that the motion itself was silly, and they could have gathered the impression that the court was intentionally belittling it, and holding counsel up to ridicule for having made it. Viewed in this light, the court's remarks could have been construed as a reflection upon counsel's knowledge and skill as a lawyer, and, perhaps, even as a suggestion that counsel was guilty of improper conduct. Not only this, but when counsel objected to the remarks of the court, which he unquestionably had a right to do, he was informed that the court would not ''put up with any more of this foolishness.'' This constituted an unmerited reprimand and prejudicial error calling for reversal. In the case of

*Adams* v. *Fisher*, 83 Neb. 686, 120 N. W. 194, it was held that it is prejudicial error for the court to reprimand counsel for interposing a proper objection.

Other errors are assigned in the motion for new trial, but, since there is little likelihood that the same questions will occur on a retrial of this cause, we deem it unnecessary to discuss the same.

For the errors indicated the judgment is reversed, and the cause remanded for a new trial.