I.V. CHAPMAN and Alvin Hugh PEARSON *v.*
STATE of Arkansas

5809                                          516 S.W. 2d 598

Opinion delivered December 23, 1974

*Walker, Kaplan & Mays, P.A.,* for appellants.

*Jim Guy Tucker,* A⁺ty. Gen., by: *Alston Jennings Jr.,* Asst. Atty. Gen., for appellee.

GEORGE ROSE SMITH, Justice. The two appellants were charged by information with having urged a riot and with having urged others to commit acts of violence by destroying property, in violation of Ark. Stat. Ann. § 41-1445 (Supp. 1973). After a long trial both defendants were found guilty, the jury fixing Chapman's punishment at a $500 fine and three years' confinement and Pearson's punishment at a $500 fine. We find it necessary to discuss only five of the nine points for reversal that are argued.

I. The appellants first question the constitutionality of the statute, which reads in pertinent part as follows:

> Section 41-1445. Every person who, with the intent to cause a riot, does an act or engages in conduct which urges a riot, or urges others to commit acts of force or violence, or the burning or destroying of property, and at a time and place and under circumstances which produce a clear and present and immediate danger of acts of force or violence or the burning or destroying of property, is guilty of a felony and upon conviction shall be subject to [specified fines or imprisonment or both].

> Section 41-1446. This Act shall not apply to, nor in any way affect, restrain or interfere with, otherwise lawful activity engaged in by or on behalf of a labor organization or organizations by its members.

Counsel contend that the statute is so broad and so vague as to deny due process of law and that the exemption of labor union activity is so discriminatory as to deny the equal protection of the laws. Among the principal cases relied upon are *Cox* v. *Louisiana,* 379 U.S. 536 (1965), and *Chaplinsky* v. *New Hampshire,* 315 U.S. 568 (1942).

We hold the statute to be constitutional. The same arguments with respect to a California statute that is in every material respect a verbatim copy of the Arkansas act were unanimously rejected by the Supreme Court of California in *People* v. *Davis,* 67 Cal. Rptr. 547, 439 P. 2d 651 (1968). There the court, in a carefully reasoned opinion, said in part: "To persons of ordinary understanding, the urging of others to acts of force or violence or to burn or destroy property . . . is neither similar nor comparable to speech which merely stirs to anger, invites public dispute, or brings about a condition of unrest. * * * The term 'clear and present danger' has long been used by the courts to distinguish between constitutionally permissible limitations on speech and limitations which run afoul of the constitutional guaranties. * * * There is no unconstitutional vagueness in charging an accused with knowledge of the meaning or import of such a phrase as applied to his acts or conduct, by speech or otherwise, if he 'urges a riot, or urges others to commit acts of force or violence, or the burning or destroying of property.' "

The court also disposed of the equal protection contention by pointing out that the second paragraph of the statute merely declares the intent of the legislature "that the provisions of the first paragraph are not to be construed to prohibit *lawful* labor union activity of a character which does not fall within the conduct described in the first paragraph." Without quoting further from the California court's excellent opinion, it is sufficient for us to say that we entirely agree with that court's reasoning and adopt its discussion as our own.

II. We find the evidence amply sufficient to sustain the convictions. On March 16, 1972, racial strife in Arkadelphia resulted in fighting and property damage at one of the schools. Late that afternoon a crowd of 200 or more black citizens gathered outside the courthouse and jail, apparently because only black students had been arrested in connection with the incidents at the school. There was much testimony to show that the two defendants actively aroused the emotion of the crowd, particularly by leading them in chants such as "Whup, whup, whup 'em up against the side of the head" and "Let our people go." Eventually the angry mood of the

crowd erupted into violence. Rocks were thrown, one officer describing them as "quite a hail of rocks." There were no personal injuries, but an unspecified number of windows were broken in buildings and in automobiles. Although many police officers had been present all along, the two defendants were not arrested until after the incidents of violence and property destruction. There is an abundance of testimony in the record to support the jury's conclusion that the two defendants were guilty of acts falling squarely within the prohibitory language of the statute; that is, that they urged others to commit acts of violence and property destruction.

III. We must sustain the appellants' contention that their defense was or may have been prejudiced by the trial court's critical remarks, in the presence of the jury, about the conduct of the defendants' attorneys. Unfortunately, there was friction between the trial judge and defense counsel almost from the beginning of the litigation. One attorney was cited for contempt of court (and found not guilty by the trial judge), and there are references to an order by which the trial judge attempted to disbar the defense law firm from practicing in the circuit court.

Most of the conflicts between court and counsel took place outside the presence of the jury, but there were other instances — two in particular — that were witnessed by the jury. The first incident occurred when a defense attorney, Mr. Mays, was introducing photographs that had been taken by the State. Confusion understandably arose, because the prosecution had intended to introduce the pictures and had put State's Exhibit Numbers on the back of them. We quote from the record:

Q. Now, may I ask you one question; do you know whether these pictures were taken —

Mr. Mathis: May I see the photographs?

Mr. Mays: This is State's No. 4.

Mr. Mathis: No, this is Defendants' No. 5.

Mr. Mays: I know it's Defendants' No. 5, but on it, it

says State's No. 4.

Mr. Mathis: Sir?

Mr. Mays: It says State's No. 4 on the back here, your Honor.

The Court: Now, Mr. Mays, you know how to conduct yourself in court. These are photographs. They are your exhibits. They are not State's No. 4.

Mr. Mays: I understand.

The Court: You understand?

Mr. Mays: Yes, sir.

The Court: Now, you either conduct yourself with propriety in this court, or I will deal with the matter at a later date.

We merely observe that the photograph was in fact marked on the back as a State's Exhibit, that the statements made by Mays were correct, and that we discern no basis for the court's implication that Mays had not conducted himself with propriety.

The second incident occurred while another defense attorney, Mr. Walker, was questioning a police officer:

Q. So up to the point where he took his shirt off, in your judgment, he had not done anything to cause you to arrest him?

The Court: The witness will not answer the question. It is repetitious. It is not a matter for the judgment of this witness, but it is a matter from all the facts that the jury will determine.

Mr. Walker: Your Honor, I respectfully suggest that this witness has arrest authority.

The Court: Every citizen has arrest authority, Mr. Walker. Now, let's move on.

Mr. Walker: Would you note our exceptions?

The Court: Yes, sir.

Mr. Walker: Did you note our offer of proffer to the court?

The Court: Yes, sir.

Mr. Walker: Would his Honor rule on our request to proffer?

The Court: Overruled.

Mr. Walker: Note our exceptions.

The Court: Yes, sir. And the court will also note your dilatory tactics.

Counsel's motion for a mistrial, made outside the hearing of the jury, was then overruled.

The motion should have been granted. As we said in *Western Coal & Mining Co.* v. *Kranc,* 193 Ark. 426, 100 S.W. 2d 676 (1937), and repeated in *McAlister* v. *State,* 206 Ark. 998, 178 S.W. 2d 67 (1944): "No principle is better settled than that a judge presiding at a trial should manifest the most impartial fairness in the conduct of the case. Because of his great influence with the jury, he should refrain from impatient remarks or unnecessary comments which may tend to result prejudicially to a litigant or which might tend to influence the minds of the jury."

In the case at bar the trial judge's reprimand in each instance was unnecessarily severe and critical, as there had been no conduct on the part of counsel calling for such a rebuke. Our settled rule is that error is presumed to be prejudicial unless we can say with confidence that it was not. *Vaughn and Wilkins* v. *State,* 252 Ark. 505, 479 S.W. 2d 873

(1972). Here we cannot conscientiously say with assurance that the trial court's remarks had no prejudicial effect upon the jury's consideration of the case.

IV. We find no abuse of discretion in the trial court's refusal to grant a change of venue, the evidence being in conflict. *Bailey* v. *State,* 204 Ark. 376, 163 S.W. 2d 141 (1942). Moreover, in seeking a change of venue counsel stressed the fact that at the time of trial racial tension in the county still existed, because the riot had occurred only a month before the case was tried. Owing to the court reporter's physical inability to transcribe the testimony promptly, the record was not filed in this court until two years after the trial. Consequently, the state of public feeling may be entirely different upon a retrial of the case. If not, the request for a change of venue may be reasserted.

V. In the only other alleged error that is likely to recur upon a new trial, counsel insist that the court should have told the jury that the assemblage in front of the courthouse would be presumed to be lawful unless and until it was shown that the law enforcement officials instructed the crowd to disperse. The statutes relied upon, Ark. Stat. Ann. §§ 42-207, 42-209, and 42-211 (Repl. 1964), merely impose upon the officers a duty to attempt to persuade the assembled persons to disperse. Their failure to take that action certainly does not convert a riot into a peaceable and lawful assembly.

Reversed.