Ismet DIVANOVICH *v.* STATE of Arkansas

CR 79-165                                    607 S.W. 2d 383
Supreme Court of Arkansas
Opinion delivered November 10, 1980

*Tapp Law Offices*, by: *J. Sky Tapp*, for appellant.

*Steve Clark*, Atty. Gen., by: *Joseph H. Purvis*, Deputy Atty. Gen., for appellee.

RICHARD L. MAYS, Justice. Appellant was convicted by a jury of capital felony murder and was sentenced to life imprisonment without parole. On appeal appellant argues 19 points for reversal. Since we find reversible error, we shall limit our discussion to those points which compel reversal and to those which, though not error, are likely to confront the court on a retrial.

Although included among appellant's points for reversal is a challenge to the sufficiency of the evidence, we find ample evidence to sustain a conviction of capital felony murder. A person commits capital murder if he causes the death of any person under circumstances manifesting extreme indifference to the value of human life while committing or attempting to commit a robbery. Ark. Stat. Ann. § 41-1501(1)(a) (Repl. 1977). Specifically, appellant, Ismet Divanovich, was charged by information, along with a co-defendant, Wayne Abbott, with feloniously causing the death of Anna Trailovich by striking her with a rubber mallet and cutting her with a knife in the course of robbing her. The evidence indicates that appellant had accompanied his landlord to the victim's apartment the day before her death and overheard her tell the landlord that she had misplaced $140.00 with which to pay her rent. The next morning appellant was observed pounding a rubber mallet against his hands, saying it would make a good murder weapon. A little later he was seen carrying what appeared to be the same rubber mallet, now covered with blood, and conversing with Wayne Abbott, who was holding a knife, also covered with blood. He was overheard saying that he thought "that lady" had more money than she had. Subsequently, the victim was found dead in her apartment (which was adjacent to appellant's), her skull having been fractured. Contusions and lacerations covered her head and blood was spattered on the floor and the door. Appellant was arrested with blood stains on his clothing and a blood stained rubber mallet and knife were found in another apartment to which appellant had a key.

We must sustain appellant's contention that his right to a fair and impartial trial was undermined and unduly jeopardized by remarks of the trial judge. The record reflects that appellants' defense attorney was threatened with jail and was

refused the opportunity to make a record to establish that the jury heard the threat.

During cross-examination of a prosecution witness by the defense attorney, the state objected to a question on the ground that it called for speculation from the witness. Instead of ruling specifically on the objection, the trial court directed counsel to "stop arguing" with the witness. The defense counsel denied that he was arguing and, during the heated exchange which followed, the court threatened the defense counsel with incarceration, saying, "I'll put you right down there where he is," referring to the defendant. The defense counsel objected, requested a mistrial, and, since there was some qustion about whether the jury heard the judge's rebuke, offered to proffer the testimony of another attorney in the courtroom who had allegedly heard the court's remark. The court refused the proffer and directed the defense counsel to proceed. When the defense counsel suggested that he could not continue with cross-examination, the court responded, "Otherwise, I'm going to declare a recess and we will have a session . . . and you may spend the night downstairs."

Although the state concedes that the judge's remarks were inartfully phrased, the state argues that they were provoked by appellant's counsel. We do not believe, however, that the responsibility of the trial judge to maintain the integrity of the judicial process is diminished by the misconduct of lawyers. As Mr. Justice Butler so aptly stated many years ago in *Western Coal & Mining Co.* v. *Kranc*, 193 Ark. 426, 429, 100 S.W. 2nd 676 (1937):

> We are not unaware that many things occur during the trial of a case to fray and irritate the nerves of the presiding judge and that he is not immune to the natural frailities of humanity, but because of his position he must exercise the greater forbearance and patience.

In alluding to the perceptive words of Justice Butler today, we emphasize that it is not the lawyer who is on trial for his life or who suffers when a judge's disparaging retort to an unseasoned attorney hardens the jury against the defense. Neither the rights of the defendant, nor the dignity of the

court can be sacrificed because of human frailties of the judge. This is no new principle of law adopted only for this occasion, but is one to which this Court has consistently adhered. In *McAlister* v. *State*, 206 Ark. 998, 178 S.W. 2d 67 (1944), we reversed a grand larceny conviction because the judge told the defense counsel that to grant his motion "would be just silly," and, that he was "not going to put up with any more of this foolishness." In *Jones* v. *State*, 166 Ark. 290, 265 S.W. 974 (1924), we found error when the defense counsel stated he was "just trying to facilitate matters" and the judge retored, "Yes, facilitate like a crawfish does, backwards." In *Chapman & Pearson* v. *State*, 257 Ark. 415, 516 S.W. 2d 598 (1974), we found error when the defense attorney, excepting to an evidentiary ruling of the court, said, "Note our exceptions," and the judge replied, "Yes, sir, and the court will also note your dilatory tactics."

We also found that the trial court erred in permitting testimony from one of the investigating officers that appellant offered to make a statement about the murder but changed his mind after talking with his lawyer. The officer testified that appellant, after several weeks in jail, stated "I'll give you a statement 20 pages long in reference to this murder." Although the appellant did not give a statement concerning the murder, the implication to the jury was clearly that appellant wanted to confess. The implication is so harmful that any probative value the evidence could have is substantially outweighed by the prejudicial effect. Rule 403, Uniform Rules of Evidence, Ark. Stat. Ann. § 28-1001 (Repl. 1979). The prejudice was not diminished by permitting appellant to explain the "statement" away when he testified in his defense. The damage had been done.

The trial court also erred by permitting the state to question appellant on cross-examination about instances of misconduct which were not probative of his veracity. Specifically, the prosecutor asked appellant if he had ever broken out a window of the car of Mr. Knezevich, a witness who testified during the trial on behalf of appellant, and whether he had ever struck or attempted to strike Mr. Knezevich with a crowbar. The prosecutor further asked appellant whether he had been guilty of damaging the apartment of two friends and

had to be restrained by deputy sheriffs. The trial court overruled the defense counsel's objections to the questions as appellant admitted breaking the windows. In *Gustafson* v. *State*, 267 Ark. 278, 590 S.W. 2d 853 (1979), this court enumerated the conditions under which questions of prior misconduct would be allowed for impeachment purposes under Rule 608(b), Uniform Rules of Evidence, Ark. Stat. Ann. § 28-1001 (Repl. 1979): (1) the questions must have been asked in good faith (2) the probative value of the conduct must outweigh any prejudicial effect, (3) the misconduct must relate to truthfulness or untruthfulness. Questions regarding appellant's violent nature and destruction of property are wholly unrelated to his propensity for honesty and, therefore, improper.

We find no merit in appellant's contention that the court erred in allowing the photographs of the victim to be introduced. The admissibility of photographs is a matter largely within the discretion of the trial court. *Gruzen* v. *State*, 267 Ark. 380, 591 S.W. 2d 342 (1979). Photographs are useful in assisting the jury to better understand the testimony and may only be excluded if their probative value is substantially outweighed by their prejudicial effect. *Gruzen* v. *State, supra*; Rule 403, Uniform Rules of Evidence, Ark. Stat. Ann. § 28-1001 (Repl. 1979). Here, the photographs revealed the nature and extent of the victim's wounds and the savagery of the attack. Since the murder was not witnessed and the murder weapon was in question, the photographs were relevant to establishing the rubber mallet, allegedly owned by appellant, as the murder weapon. We have held that the ghastly character alone of a photograph which depicts the wounds inflicted upon a body does not necessarily justify excluding it. *Perry* v. *State*, 255 Ark. 378, 500 S.W. 2d 387 (1973). No error has been shown.

We find appellant's challenges to the court's jury instructions to be insubstantial and discern no particular value in discussing them at length.

Reversed and remanded.