Harless Dale MAULDING *v.* STATE of Arkansas

CR 87-54                               757 S.W.2d 916

Supreme Court of Arkansas
Opinion delivered September 26, 1988

*Chet Dunlap*, for appellant.

*Steve Clark*, Att'y Gen., by: *Clint Miller*, Asst. Att'y Gen., for appellee.

JACK HOLT, JR., Chief Justice. The appellant, Harless Dale Maulding, was convicted of rape, kidnapping, and burglary and sentenced to life plus forty years imprisonment. For reversal he argues that the trial court erred in failing to suppress evidence of a pretrial lineup identification and an in-court identification, commenting on the evidence, and citing defense counsel with contempt in the presence of the jury. In addition, he asserts that there was insufficient evidence to support the jury verdict. We find no error and affirm the judgment of the trial court.

At approximately 2:00 a.m. on September 12, 1986, a person broke into the eighty-seven-year-old victim's home in Trumann, Arkansas, and raped her. He then took her in her car to a junk pile outside of town and raped her again in the front seat of the car. At about 9:00 a.m., he drove back to town, where he made an unsuccessful attempt to have her withdraw money from her account at a local drive-in bank. Then, around 3:00 p.m. he drove her to a local manufacturing plant and released her. She immediately drove home and called relatives, who took her to the hospital.

Later in the day, she described her abductor to police as follows: tall, slim build, wavy brown hair, mustache, a light beard,

wearing blue jeans and a brown plaid shirt. On September 13, 1986, the police showed the victim a single photograph of Maulding depicting him with a mustache but without a beard. She positively identified him as the perpetrator. The police arrested Maulding the next day.

On September 15, she viewed a lineup at the station. When asked if she saw the individual who had molested her, she stated, "He's in here, but he's shaved." She then positively identified Maulding. Later at trial she made an in-court identification of him. In addition, evidence concerning the photographic and lineup identifications was introduced, together with supplemental eyewitness testimony connecting Maulding to the crimes.

## I. ADMISSIBILITY OF LINEUP AND IN-COURT IDENTIFICATIONS.

Maulding argues that the trial court erred in failing to suppress evidence of the pre-trial lineup identification and the in-court identification on the basis they were tainted by the single photographic display. We disagree.

We do not reverse a trial court's ruling on the admissibility of an identification unless, under the totality of the circumstances, it is clearly erroneous. *Hogan* v. *State*, 280 Ark. 287, 657 S.W.2d 534 (1983). See *Frensley* v. *State*, 291 Ark. 268, 724 S.W.2d 165 (1987). The threshold question before us under *Manson* v. *Brathwaite*, 432 U.S. 98 (1977), is whether the showing of the single photograph of Maulding to the victim was an impermissibly suggestive procedure. The showing of a single photograph, in the absence of exigent circumstances, is an impermissibly suggestive identification procedure, *United States* v. *Williams*, 616 F.2d 759 (5th Cir. 1980); *United States* v. *Bubar*, 567 F.2d 192 (2nd Cir.), *cert. denied*, 434 U.S. 872 (1977); *United States v. Dailey*, 524 F.2d 911 (8th Cir. 1975); *Nassar* v. *Vinzant*, 519 F.2d 798 (1st Cir.), *cert. denied*, 423 U.S. 898 (1975), and highly suspect. However, this determination does not end our inquiry.

Even if an identification technique is impermissibly suggestive, testimony concerning it is admissible if the identification in question is reliable. *Manson, supra.* Reliability is the linchpin in determining the admissibility of identification testi-

mony. *Id.; Hogan, supra.* In determining reliability, we examine the following factors: (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the prior description of the criminal, (4) the level of certainty demonstrated at the confrontation, and (5) the time between the crime and confrontation. *Id.; Robinson v. State,* 293 Ark. 51, 732 S.W.2d 159 (1987). *See also Whitt* v. *State,* 281 Ark. 466, 664 S.W.2d 876 (1984). Against these factors is to be weighed the corrupting effect of the suggestive identification itself. *Manson, supra.*

We turn, then, to the facts of this case and apply the *Manson* analysis:

1. The opportunity to view. The victim was with the perpetrator from 2:00 a.m. until 3:00 p.m., a total of thirteen hours, a large percentage of which was in daylight. She testified that during this time she "made a point to study his features."

2. The degree of attention. The victim was not a detached observer as so often is the case with eyewitness identification, but instead an observant victim of crime.

3. The accuracy of the description. The victim's description included the color and texture of the perpetrator's hair, his height, build, what he wore, and the presence of facial hair. No claim has been made that the defendant did not and does not possess a substantial number of these physical characteristics. The defense did dispute the victim's testimony that Maulding had a beard on the day of the crime. However, the testimony at trial does not conclusively establish whether he did or did not.

4. The witness's degree of certainty. The victim was positive in her photographic identification of Maulding.

5. The time between the crime and confrontation. The photographic identification occurred only a day after the crime.

These indicators of the victim's ability to make an accurate identification outweigh the corrupting effect of the challenged identification. We find no evidence in the record that there was any pressure on the victim to make an identification of Maulding. Under the circumstances of the case, we cannot say there was a "very substantial likelihood of irreparable misiden-

tification." *Simmons* v. *United States*, 390 U.S. 377, 384 (1968). Accordingly, testimony concerning the reliable photographic identification cannot be said to have tainted the subsequent lineup and in-court identifications. The trial court was correct in refusing to suppress the identifications.

## II. SUFFICIENCY OF THE EVIDENCE.

Maulding contends that the evidence was insufficient to support the jury verdict. This argument is meritless.

We affirm if there is substantial evidence to support the jury verdict. *Lewis* v. *State*, 295 Ark. 499, 749 S.W.2d 672 (1988). In determining whether there is substantial evidence, we view the evidence in a light most favorable to the State. *Id.* Substantial evidence is evidence which is of sufficient force to compel a conclusion one way or another. *Id.*

The victim testified at trial concerning the details of the rape, burglary, and kidnapping and identified Maulding as the perpetrator. Her testimony alone is sufficient to support the verdict. *Cope* v. *State*, 292 Ark. 391, 730 S.W.2d 242 (1987); *Davis* v. *State*, 284 Ark. 557, 683 S.W.2d 926 (1985). Moreover, there was additional eyewitness testimony and physical evidence linking Maulding to the crimes.

Maulding's argument essentially is an attack on the credibility of the witnesses, in particular the victim's. Credibility, of course, is for the jury to decide. *Lewis, supra.* We find there is substantial evidence to support the verdict.

## III. COMMENTS BY THE TRIAL JUDGE.

Maulding argues the trial court committed reversible error by commenting on the evidence. We disagree.

As defense counsel on cross-examination was attempting to introduce a prior statement of the victim for impeachment purposes, which the trial court had previously ruled inadmissible, he and the trial judge had the following exchange:

> Mr. Dunlap: Your Honor, with all due respect can I present the statement that she made to him again?
>
> The Court: I would suggest, Mr. Dunlap, that you make

the statement, mark it for identification only, *make it part of the record so that your theory can be reviewed by the Supreme Court if they care to review this matter.* And let's move it along and quit wasting so much time on it. It is not contradictory. [Emphasis added.]

Defense counsel then moved for a mistrial. The trial court denied the motion. Thereafter, the trial judge, defense counsel, and the prosecution entered into a lengthy and heated discussion (most of it being out of the presence of the jury) concerning the admissibility of the statement. Almost immediately thereafter, the trial court instructed the jury as follows:

> Before we resume cross-examination of Mrs. Jordan, I do have one cautionary instruction which I feel would be appropriate at this time in view of the exchange and colloquy between the attorneys and the court.
>
> I have not intended by anything I have said or done, or by any questions that I may have asked, or by any ruling upon any objection to remarks of the attorneys to intimate or suggest what you should find to be the facts, or that I believe or disbelieve any witness who testified. If anything that I have done or said has seemed to so indicate to you, you will disregard it.

It is well settled that a trial judge should not express his opinion on the guilt or innocence of a defendant. *Pride* v. *State*, 285 Ark. 89, 684 S.W.2d 819 (1985). *See also Kitchen* v. *State*, 271 Ark. 1, 607 S.W.2d 345 (1980). Maulding contends that the trial judge's remark, "make it part of the record so that your theory can be reviewed by the Supreme Court if they care to review this matter," inferred to the jury that the trial judge believed that Maulding was guilty and would be found guilty. The possibility that the jury may have interpreted the judge's remark in this manner is remote. The remark is subject to multiple interpretations. It just as likely would be interpreted as one informing counsel that he should make a record in case the defendant is found guilty or in case the Supreme Court "cares to review the matter."

In any event, even if we assume that Maulding suffered prejudice from the trial judge's remark, reversal is not

warranted in light of the convincing evidence of guilt and the judge's admonition to the jury. We will not reverse for errors which do not affect the essential fairness of a trial. *Scherrer* v. *State*, 294 Ark. 227, 742 S.W.2d 877 (1988). A defendant is entitled to a fair trial, not a perfect one. *Id.*

We do caution the trial judge to be guarded when making any remarks concerning appellate review in the presence of the jury.

## IV. CONTEMPT.

Maulding asserts that his right to a fair and impartial trial was undermined and unduly jeopardized when the trial judge held his counsel, Mr. Dunlap, in contempt of court in the presence of the jury. We hold to the contrary.

It was necessary during the course of the trial for the court to rule unfavorably against Maulding's counsel in matters relating to jury selection, expert testimony, hearsay testimony, and inadmissible evidence. There was frequent exchange between the court and counsel, both in chambers and before the jury.

The conflicts between the trial court and Maulding's counsel came to a final conclusion when counsel, through leading questions, elicited from a defense witness that a police officer, conducting an investigation, had come to her house and "propositioned" her. After the trial court sustained an objection by the state to this testimony, the following exchange occurred:

Mr. Dunlap: Your Honor, I will pass the witness.

The Court: Do you want any part of that stricken?

Mr. Hunter [prosecutor]: Your Honor, we are prepared to call Officer Bland back on rebuttal.

The Court: The question and answer is stricken from the evidence and the jury is admonished not to consider it.

Mr. Dunlap: *Your Honor, in all due respect would the Court consider assisting the defense every now and then, when the defense needs it?* [Emphasis added.]

Mr. Hunter: I object to those remarks, Your Honor.

The Court: *That is a contemptuous statement, Mr. Dun-*

*lap, and you are in contempt of court.* [Emphasis added.]

Immediately thereafter, the trial court, by general instruction, advised the jury that the only issue for its consideration was the guilt or innocence of the defendant.

Before we proceed, we should note that a question exists as to whether or not the jury heard the judge hold counsel in contempt. For the purposes of appeal, we will assume the jury heard the judge's remarks.

We have found reversible error where a trial judge made an unmerited rebuke or a disparaging retort to defense counsel in the presence of the jury on the basis that such actions unduly prejudice the defense. *Davis* v. *State*, 242 Ark. 43, 411 S.W.2d 531 (1967) (opinion on granting of rehearing); *McAlister* v. *State*, 206 Ark. 998, 178 S.W.2d 67 (1944); *Jones* v. *State*, 166 Ark. 290, 265 S.W. 974 (1924). *See also Divanovich* v. *State*, 271 Ark. 104, 607 S.W.2d 383 (1980); *Chapman & Pearson v. State*, 257 Ark. 415, 516 S.W.2d 598 (1974). In *Jones*, we found error when the defense counsel stated that "he was just trying to facilitate matters," and the judge retorted, "Yes, facilitate like a crawfish does, backwards." In *Divanovich*, we found error where, the trial judge, during a heated exchange with defense counsel, threatened counsel with incarceration, stating, "I'll put you right down there where he is," referring to the defendant.

In the present case, however, the record is devoid of any disparaging remarks made by the trial judge to defense counsel. In addition, defense counsel does not deny that the rebuke by the judge was warranted. Thus, we must decide whether holding defense counsel in contempt in the presence of the jury, standing alone, is reversible error.

■ It is the better practice, except in extreme cases, for a trial court to discipline lawyers out of the presence of the jury. *See Davis, supra*. However, disciplining or rebuking counsel in the presence of the jury does not automatically constitute reversible error unless this action denies the defendant a fair trial.

In *Alexander* v. *Chapman*, 289 Ark. 238, 711 S.W.2d 765 (1986), we noted that trial judges by necessity are granted great power and discretion to preserve the order of their courtrooms and have at their command an arsenal of sanctions to see that the

rules are followed, including admonishment of the attorney *at the bench or before the jury.* [Emphasis added.] *See Blaylock* v. *Strecker,* 291 Ark. 340, 724 S.W.2d 470 (1987).

Under the totality of the circumstances, the trial court did not err in admonishing Maulding's counsel in the presence of the jury. In citing defense counsel with contempt, the trial judge did not address or refer to Maulding, did not express his opinion on the issue of Maulding's guilt, and did not assess sanctions in front of the jury. In addition, the judge admonished the jury immediately after holding defense counsel in contempt. Moreover, the evidence of Maulding's guilt is convincing. Where evidence of guilt is convincing, we have affirmed convictions despite improper conduct by the trial judge. *See Rogers* v. *State,* 257 Ark. 145, 515 S.W.2d 79 (1974), *cert. denied,* 421 U.S. 930 (1975).

Pursuant to Ark. Sup. Ct. R. 11(f), we have examined all other objections made at trial and find no reversible error.

Affirmed.