Tyrone JONES *v.* STATE of Arkansas

CR 89-198                                          785 S.W.2d 218

Supreme Court of Arkansas
Opinion delivered March 12, 1990

*William R. Simpson, Jr.*, Public Defender, by: *Jerry J. Sallings*, Deputy Public Defender, for appellant.

*Steve Clark*, Att'y Gen., by: *Theodore Holder*, Asst. Att'y Gen., for appellee.

OTIS H. TURNER, Justice. The appellant, Tyrone Jones, was convicted of the crime of aggravated robbery, a class Y felony, and was sentenced to forty years imprisonment. The trial court ordered the sentence to run consecutively with previous consecutive sentences of life imprisonment and thirty-seven years.

Two issues are raised as grounds for reversal. First, the appellant contends that he should receive credit against his sentence for time spent in confinement while awaiting trial. Because we are reversing on the other issue, it is unnecessary for us to address that question. However, in a companion case decided today, *Jones* v. *State*, 301 Ark. 510, 785 S.W.2d 217 (1990), that issue is fully discussed; there, the appellant was credited with jail-time while incarcerated awaiting trial on those charges and the charges here. The holding in that case applies as well here.

For his second point for reversal, the appellant objects to two gratuitous comments made by the trial judge in the course of jury voir dire. He contends that the remarks were inappropriate and so prejudicial in character that a mistrial should have been declared. We agree.

After the twelve prospective jurors were seated, the following transpired:

> PROSPECTIVE JUROR: There's one thing I should say, I was a victim of a crime in March. My car was broken into in my driveway, but as far as I am concerned it wouldn't have any bearing on my decision today, but I thought I should tell you this.
>
> COUNSEL FOR STATE: I appreciate it. Was some resolution achieved in that case or is it still —
>
> PROSPECTIVE JUROR: It's still pending. Nothing was

— personal items were taken, credit cards and —

COUNSEL FOR STATE: I see. Is there anything about that particular incident that makes you uncomfortable about being here today for this one?

PROSPECTIVE JUROR: No, sir.

\* \* \*

COUNSEL FOR DEFENDANT: Thank you, your Honor. I'll ask you all the same questions I have asked everybody. Would any of your answers be different than the answers given by the other jurors to my questions? Mr. Dunn, I appreciate your candor on that one issue. Were you a witness in this case?

PROSPECTIVE JUROR: My particular —

COUNSEL FOR DEFENDANT: Yes, sir.

PROSPECTIVE JUROR: There's nothing that will solve this case.

COUNSEL FOR DEFENDANT: But you weren't an eyewitness?

PROSPECTIVE JUROR: No. It happened in the night and my car was in my driveway and I discovered it the next morning.

COUNSEL FOR DEFENDANT? Okay. And you would be able to set that aside and hear the case today?

PROSPECTIVE JUROR: Yes, sir.

COUNSEL FOR DEFENDANT: Okay. Anything else from anybody else? Thank you very much.

THE COURT: Thank you . . . [Addressing the prospective juror] Did you read in the paper the other day someone got shot breaking in a car?

PROSPECTIVE JUROR: Yes, sir, I did.

THE COURT: Attorney General tells me that's against the law. I don't think it is.

PROSPECTIVE JUROR: I agree with you.

THE COURT: I think the Attorney General says you are supposed to say "Stop" and if he doesn't (sic) stop you let them go. If you tell them to stop and they don't stop, you shoot them.

PROSPECTIVE JUROR: My car sits right out of my bedroom, and I can just look right out and see my car. Whoever did it was awfully quiet.

THE COURT: It's a shame. How many here would convict someone of shooting somebody getting in their car? You think you would convict someone who did that?

PROSPECTIVE JUROR: Could or would?

THE COURT: Convict someone? Find them guilty of battery or something like that.

PROSPECTIVE JUROR: I think I would.

THE COURT: No, no. If you shot someone, like take this fellow over here. The paper said they hadn't decided whether or not to bring charges. And he was brought here to court and he's the defendant and he gets up here and testifies that, "I shot, fired a warning shot, and that fellow started running off and I shot him in the rear with a .22." How many of you would find him guilty? Any of you find him guilty? I wouldn't. I'll probably get in a lot of trouble for saying that.

\* \* \*

COUNSEL FOR DEFENDANT: Your Honor, I've got kind of a problem with the conversation regarding how —

THE COURT: Oh, you want to move for a mistrial?

COUNSEL FOR DEFENDANT: Yes, sir. I think I will.

THE COURT: Well, good. It's denied.

We hold that these comments, made by the trial court to prospective jurors as they were questioned and being qualified to try a case of aggravated robbery, constitute error *per se*. We have consistently acknowledged the great influence that a trial judge

has on jurors. He must, therefore, refrain from impatient remarks or unnecessary comments which might indicate his personal feelings or which might tend to influence the minds of jurors to the prejudice of a litigant. See *Oglesby* v. *State*, 299 Ark. 403, 773 S.W.2d 443 (1989).

The trial judge is the one person who controls the conduct of all participants in the course of a trial, from beginning to end, and instructs the jury regarding the law which must be applied to the facts. Hence, a judge presiding at a trial should manifest the most impartial fairness in the conduct of the case. *Chapman* v. *State*, 257 Ark. 415, 516 S.W.2d 598 (1974).

In the present case, the appellant made a timely motion for a mistrial. Though mistrial is a drastic remedy, if justice cannot be served by continuing, it is nevertheless an appropriate remedy. *Floyd* v. *State*, 278 Ark. 342, 645 S.W.2d 690 (1983).

Reversed and remanded.

PRICE, J., not participating.