## James E. NOBLES *v.* Pati CASEBIER

96-1137                                                938 S.W.2d 849

Supreme Court of Arkansas
Opinion delivered March 3, 1997

[Petition for rehearing denied March 24, 1997.]

*Larry J. Steele,* for appellant.

*Barrett & Deacon,* by: *David W. Cahoon* and *D.P. Marshall, Jr.,* for appellee.

W.H."Dub" Arnold, Chief Justice. This is a personal injury case arising out of an automobile accident on January 11, 1994. The jury rendered a verdict in favor of the appellee, Pati

Casebier. Appellant James Nobles raises one issue on appeal. He contends that the trial court made an improper comment on the evidence, thus warranting a mistrial. We find no error and affirm.

The accident occurred while Mr. Nobles was driving his 1982 Chevrolet pickup truck on State Highway 1. While in the process of turning left from the highway, he was struck by a 1989 Ford automobile driven by Ms. Casebier. Mr. Nobles filed suit against Ms. Casebier alleging that her negligence was the proximate cause of the accident and that, as a result thereof, he sustained personal injuries. Ms. Casebier denied any negligence, and the matter was set for trial.

On February 29, 1996, the case was tried before a jury in Randolph County. After jury selection and opening statements, Mr. Nobles presented his case, consisting of his own testimony, the testimony of chiropractor Dr. Evana Dion Taylor Pickett, the testimony of Ms. Casebier, and the evidentiary depositions of the investigating officer and another chiropractor, Dr. Jim Taylor. Dr. Taylor's deposition was read to the jury by the attorneys for the parties. The cross-examination portion was read by Ms. Casebier's attorney, David Cahoon. Near the end of Mr. Cahoon's reading, the following remarks were made in the presence of the jury:

> MR. CAHOON: I'm going to end my cross-examination. My eyes hurt. I'll read part of your redirect but I'm not going to read any more. That's enough.
>
> THE COURT: Well, are you okay?
>
> MR. CAHOON: Well, I got a headache, that's all. Started wearing glasses about a month ago and it's really bothering me.
>
> THE COURT: Maybe you need to go to the chiropractor.
>
> MR. CAHOON: Maybe so.
>
> THE COURT: Okay. You want to get down and read yours or you want to quit?
>
> MR. STEELE [counsel for Mr. Nobles]: Judge, could we approach the bench?
>
> THE COURT: Yeah.

(Thereupon the following is held at the bench out of the hearing of the jury):

MR. STEELE: I know that was an inadvertent remark, but obviously the jury laughed and, you know, I know that you didn't mean anything by it, but, but I, it was a disparaging remark on chiropractors or at least it could have been taken that way.

THE COURT: Why, I didn't mean that. I like chiropractors.

MR. STEELE: I know but, but the jury got a big laugh out of it and. . .

THE COURT: Do you want a mistrial?

MR. STEELE: Yes, sir.

THE COURT: Overruled.

MR. STEELE: Thank you.

After the colloquy at the bench, Mr. Steele read a page and a half of redirect testimony from the deposition. Both parties then rested their cases and agreed upon the jury instructions that were to be read to the jury. After closing arguments, the jury retired to deliberate and eventually returned with a unanimous verdict in favor of Ms. Casebier. Appeal was taken to this court by Mr. Nobles, pursuant to Ark. Sup. Ct. R. 1-2(a)(16). He characterizes his issue on appeal as follows:

> The joke made by the court about chiropractors during the reading of the appellant's evidentiary deposition taken from a chiropractor was an improper comment on the evidence and was error.

Mr. Nobles argues that his request for a mistrial should have been granted. A mistrial is a drastic remedy which should be resorted to only when there has been error so prejudicial that justice cannot be served by continuing the trial. *Webb v. State*, 327 Ark. 51, 938 S.W.2d 806 (1997); *Davis v. State*, 325 Ark. 96, 925 S.W.2d 768 (1996); *Stewart v. State*, 320 Ark. 75, 894 S.W.2d 930 (1995). It is proper only when the error is beyond repair and cannot be corrected by any curative relief. *Weaver v. State*, 324 Ark. 290, 920 S.W.2d 491 (1996). The granting of a mistrial is within the sound discretion of the trial court, and the exercise of that

discretion will not be disturbed on appeal absent a showing of abuse. *Id.*

We find no abuse of discretion in this case in the court's denial of a mistrial, although we certainly do not condone the type of comment made by the trial judge. The comment, when examined in the full context of the record, see *Harris v. State*, 273 Ark. 355, 620 S.W.2d 289 (1981), cannot be said to be so prejudicial that the trial could not continue. It is also noteworthy that the appellant did not request any other form of curative relief, such as an admonition. When there is doubt as to whether the trial court abused its discretion in denying a mistrial, a failure to request an admonition will negate a mistrial motion. *Weaver v. State, supra.* Finally, any potential error in this case was cured by the standard cautionary instruction, AMI Civil 3d 101 (given by the court without objection by either party), which reads in part:

> I have not intended by anything I have said or done, or by any questions that I may have asked, to intimate or suggest to you what you should find to be the facts, or that I believe or disbelieve any witness who has testified. If anything that I have done or said has seemed to so indicate, you will disregard it.

For the above reasons, we affirm.

Affirmed.

NEWBERN, and THORNTON, JJ., dissent.

DAVID NEWBERN, Justice, dissenting. The majority opinion correctly states general rules concerning mistrials, but it fails to apply them as our Constitution and our case law require. Considering the timing of the Trial Court's remark and the context in which it was made, no doubt remains that Mr. Nobles was deprived of a fair trial.

No factors make more indelible impressions on jurors than the attitudes, statements, and opinions of a trial judge. *West v. State*, 255 Ark. 668, 501 S.W.2d 771 (1973). To jurors, his word is the law. *Id.* Due to the great influence a trial judge has on a jury, the judge should refrain from making unnecessary comments which could prejudice one of the litigants or influence the jury. *Dillon v. State*, 317 Ark. 384, 877 S.W.2d 915 (1994); *Oglesby v.*

*State*, 299 Ark. 403, 773 S.W.2d 443 (1989); *Divanovich v. State*, 271 Ark. 104, 607 S.W.2d 383 (1980). Those have been our sentiments, just as they undoubtedly were the sentiments of the authors of Ark. Const. art. 7, § 23, which provides, in part, "Judges shall not charge juries with regard to matter of fact. . . ."

A judge should always preside with impartiality and must be cautious and circumspect in his language, leaving the jury as the sole judge of the facts and the credibility of witnesses. *West v. State, supra; Fechheimer-Kiefer Co. v. Kempner*, 116 Ark. 482, 179 S.W. 179 (1915). Any expression or intimation of an opinion by the judge as to questions of fact or the credibility of witnesses would tend to deprive one or more of the parties of the benefits guaranteed by the Constitution, and would be a palpable violation of the organic law of the State. *Sharp v. State*, 51 Ark. 147, 10 S.W. 228 (1888). *See also West v. State, supra.*

When considering whether a trial judge's remarks deprive a party of a fair trial, we look to the totality of the circumstances. *See Dillon v. State, supra; Peals v. State*, 266 Ark. 410, 584 S.W.2d 1 (1979). The only way to determine the real meaning or true import of any isolated remark is to consider the context in which it was made. *Childress v. State*, 322 Ark. 127, 907 S.W.2d 718 (1995); *Harris v. State*, 273 Ark. 355, 620 S.W.2d 289 (1981).

A review of our cases shows that we have not blithely ignored the unsolicited and unfortunate remarks of judges concerning evidence being presented before juries. We have held numerous times that such a remark warrants a mistrial. For example, in *Jones v. State*, 166 Ark. 290, 265 S.W. 974 (1924), the Trial Court responded to defense counsel's explanation that the witness "was just trying to facilitate matters," by saying, "Yes, facilitate like a crawfish does, backwards." Perhaps that, too, was an attempt at levity. In *McAlister v. State*, 206 Ark. 998, 178 S.W.2d 67 (1944), the trial judge said that to grant the appellant's motion to question a witness "would be just silly." In *Fuller v. State*, 217 Ark. 679 at 681, 232 S.W.2d 988 (1950), the Trial Court stated, ". . . these men here on the jury have something else to do besides listen to that."

Mistrial was also approved in *West v. State*, 255 Ark. 668, 501 S.W.2d 771 (1973), where the Trial Judge asked witnesses how much they had been paid to come up with some information, and in *Divanovich v. State*, 271 Ark. 104, 607 S.W.2d 383 (1980), where the Trial Judge, during a heated exchange with defense counsel, threatened counsel with incarceration, stating, "I'll put you right down there where he is," referring to the defendant.

In *Oglesby v. State*, 299 Ark. 403, 773 S.W.2d 443 (1989), the Judge, while viewing a sexually explicit movie, said, "I'm feeling ill. How much longer?" We held a mistrial should have been granted. Finally, in *Jones v. State*, 301 Ark. 530, 785 S.W.2d 218 (1990), we approved a mistrial where, during *voir dire* of the jury, the Judge told a potential juror, whose car had been burglarized, that the attorney general had said it would be against the law to shoot someone who was breaking into your car, but opined that he did not think that was the law. He then asked the jury panel how many of them would convict someone who shot another person caught breaking into their car.

Unlike most of the very serious remarks we held to warrant mistrials in the cases cited, the one we consider here was made to get a laugh from the listeners, including the jurors. Although it was thus not of the "serious" sort, it was nonetheless devastating to Mr. Nobles' case. It was made while a chiropractor's deposition, that of Dr. Jim Taylor, was being read into the record.

> MR. CAHOON (Counsel for Ms. Casebier): I'm going to end my cross examination. My eyes hurt. I'll read part of your redirect but I'm not going to read any more. That's enough.
>
> THE COURT: Well, are you okay?
>
> MR. CAHOON: Well, I got a headache, that's all. Started wearing glasses about a month ago and it's really bothering me.
>
> THE COURT: Maybe you need to go to the chiropractor.
>
> MR. CAHOON: Maybe so.
>
> * * *
>
> MR. STEELE (Counsel for Mr. Nobles): I know that was an inadvertent remark, but obviously the jury laughed and, you know, I know that you didn't mean anything by it but, but I, it

was a disparaging remark on chiropractors or at least it could've been taken that away.

THE COURT: Why, I didn't mean that. I like chiropractors.

MR STEELE: I know but, but the jury got a big laugh out of it and . . .

THE COURT: Do you want a mistrial?

MR. STEELE: Yes, sir.

THE COURT: Overruled.

There was no apparent purpose for the remark other than to elicit laughter. In any event, it is undisputed that the jury laughed and that chiropractic was the butt of the joke. Even a cursory reading of the record leads to the inevitable conclusion that the jury's laughter was at the expense of chiropractors.

There may be circumstances in which such a remark would be harmless or curable, but not here. All of the evidence concerning Mr. Nobles' damages was presented through his chiropractor witnesses. Once that evidence was impugned, the jury's finding in favor of Ms. Casebier was a foregone conclusion.

Ms. Casebier defended on two bases; first, that she did not cause the accident, and second, that Mr. Nobles was not injured. Mr. Nobles' injury claim was challenged throughout the proceedings.

The attack began with Ms. Casebier's answer denying that Mr. Nobles suffered any damages. At trial, Ms. Casebier cross-examined Mr. Nobles on the issue of damages. Mr. Nobles explained that he was not cut, scraped, or bleeding after the accident. He also admitted that he did not call an ambulance, did not know he was injured and even told Ms. Casebier that he was not injured.

Ms. Casebier's cross examination of Dr. Evana Dion Taylor Pickett further illustrates her attempts to show the jury that Mr. Nobles was not injured. Dr. Pickett testified that it was her understanding that Mr. Nobles began to experience pain immediately after the accident. On redirect, she explained that "immediately" could mean several hours after the accident. On recross, she

once again had to explain that she wrote down "immediately." The examination of Dr. Pickett shows how Mr. Nobles' failure to claim injury at the time of the accident was stressed to the jury.

Ms. Casebier testified that she "just barely caught his bumper." She told the jury that Mr. Nobles said that he was "just fine." She also testified that Mr. Nobles told her directly after the accident that he "didn't even feel a bump," but "heard a little noise." Without doubt, this testimony was given to bolster her claim that Mr. Nobles did not suffer any injury.

Finally, jury instruction # 6 stated:

> Now James Nobles claims damages from Pati Casebier and has the burden of proving each of three essential propositions:
>
>> *First, that he has sustained damages;*
>> Second, that Pati Casebier was negligent; and
>> Third, that such negligence was a proximate cause of James Nobles' damages.
>
> Now if you find from the evidence in this case that each of these propositions has been proved, then your verdict should be for James Nobles; *but if, on the other hand, you find from the evidence that any of these propositions has not been proved, then your verdict should be for Pati Casebier.* (AMI 203). [Emphasis added.]

The instruction pointedly requires the jury to find, prior to reaching any conclusion as to fault, that Mr. Nobles sustained damages. All of the evidence of his damages was produced through the expert testimony of two chiropractors. The Trial Court's remark during the presentation of the expert testimony all but ensured that the jury would not find any damages, thus, based on this instruction, the jury could not find in favor of Mr. Nobles.

The majority opinion attempts to gloss over the prejudicial nature of the remark by pointing to the fact that Mr. Nobles did not request an admonishment, and that one of the instructions to the jury instructed them to disregard any comments from the Trial Court. The problem with this analysis is that the trial was rendered unfair the moment the Trial Court commented on the evidence and should not have continued. *See Jones v. State*, 301 Ark. 530, 785 S.W.2d 218 (1990). When an admonishment can not cure the prejudicial effect, there is no duty to make such a request.

*West v. State, supra.* An admonishment could not have cured the prejudice, thus, the instruction relied upon by the majority could not be expected to do so.

Surely it is not the intent of the majority to hold that the instruction to the jury to disregard the Trial Court's remarks concerning the evidence is sufficient to allow a judge to say anything he or she pleases and then wipe the slate clean by such an instruction. Obviously, there are lines to be drawn, and our Constitution, our cases, and our commitment to fairness require reversal in this instance.

I respectfully dissent.

THORNTON, J., joins.